**Larry J. THOMISON, et al.,**

v.

**LONG BEACH MORTGAGE COMPANY.**

No. A–00–CV–783 JN.

United States District Court,
W.D. Texas,
Austin Division.

Dec. 27, 2001.

L. Marc Grosz, III, Grosz & Associates, Houston, TX, for plaintiffs.

Michael W. Janacek, Hughes, Watters & Askanase, L.L.P., C. Ed Harrell, Jr., Hughes, Watters & Askanase, L.L.P., Houston, TX, for defendant.

## ORDER

NOWLIN, Chief Judge.

Before the Court are Plaintiffs' Motion for Summary Judgment (Clerk's Doc. No. 21) filed 27 August 2001, Defendant's Opposition to Motion for Summary Judgment (Clerk's Doc. No. 22) filed 6 September 2001, Defendant's Motion for Judgment on the Pleadings (Clerk's Doc. No. 23) filed 7 September 2001, Plaintiffs' Response to Defendant's Motion for Judgment on the Pleadings and Reply to Defendant's Opposition to Motion for Summary Judgment (Clerk's Doc. No. 24) filed 13 September 2001. Upon review of the pleadings, the applicable legal authorities, and the entire case file, the Court enters the following Order.

### I. *Background*

Plaintiffs filed this declaratory action seeking a pronouncement from this Court that the extension of credit issued to them by Defendant violates the Texas Constitution. The Texas Constitution places certain restrictions on transactions involving a homestead. *See* Tex. Const. art. XVI, § 50. One such restriction forbids an extension of credit that requires the owner to pay fees to "originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit." Tex. Const. art. XVI, § 50(a)(6)(E). Monies charged as "interest" are not to be included in the three percent fee calculation. *Id.*

Defendant made a $68,000 extension of credit to Plaintiffs on 10 November 1998

that was secured by Plaintiffs' homestead. Therefore, if Defendant charged Plaintiffs more than $2,040 in "fees," this extension of credit violated the Texas Constitution.

The dispute between the parties centers on two particular charges: the $680 "loan origination fee" and the $1,020 "loan discount." Should the Court find either of these charges to be "fees" within the meaning of § 50(a)(6)(E), then the extension of credit at issue will be in violation of the Texas Constitution.[1]

## II. Texas Constitutional Interpretation

In a recent case involving the same constitutional provision, the Supreme Court of Texas stated:

> When interpreting our state constitution, we rely heavily on its literal text and must give effect to its plain language. *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex.2000); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997). We strive to give constitutional provisions the effect their makers and adopters intended. *See Stringer*, 23 S.W.3d at 355; *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex.1986). We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Purcell v. Lindsey*, 158 Tex. 541, 314 S.W.2d 283, 284 (1958); *Duncan v. Gabler*, 147 Tex. 229, 215 S.W.2d 155, 159 (1948); *Collingsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13, 15 (1931). And we strive to avoid a construction that renders any provision meaningless or inoperative. *See Stringer*, 23 S.W.3d at 355; *Hanson v. Jordan*, 145 Tex. 320, 198 S.W.2d 262, 263 (1946).

*Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex.2001).

## III. Analysis

 The Court finds that the $680 "loan origination fee" is a fee within the meaning of § 50(a)(6)(E).[2] If a "loan origination fee" is not a "fee[ ] . . . necessary to originate . . . the extension of credit," the Court cannot fathom what such a fee would be. As the "literal text" is to be relied on and no provisions are to be "meaningless or inoperative," this is simply the only possible outcome. While this is the only possible outcome, the Court would like to point out the ill-conceived wording of § 50(a)(6)(E) that caused this lawsuit. The problem lies in § 50(a)(6)(E)'s call to differentiate between "fees" and "interest."[3] The Texas Fi-

---

**1.** Plaintiffs have submitted a "Settlement Statement" and an affidavit from Plaintiff Doris Thomison that detail $1,675.48 of charges made in connection with this extension of credit. These charges include $810 for "title insurance," $500 for "appraisal fee," $125 for "credit report," $100 for "escrow fee," $50 for "Federal Express," $48 for "recording fees," $32.48 for "tax certificates," and $10 for "messenger service." Plaintiffs have alleged that these are fees within the meaning of § 50(a)(6)(E); Defendant has submitted no arguments or evidence to the contrary. As such, the Court finds that these are "fees" with the meaning of § 50(a)(6)(E). Therefore, any "fee" greater than $364.52 will put the fees charged in connection with this extension of credit over the $2,040 constitutional cap.

**2.** As the Court finds the loan origination fee to be a § 50(a)(6)(E) fee, the Court need not reach the issue of whether the "loan discount" is such a fee as well.

**3.** The author of this section would have done well to include the following disclaimer from Professor Thomas Grey's clever article that points out some of the subtleties of interpretation:

> "But take care. Traps are here. Words mean. I mean. You, reading, want"

Thomas C. Grey, *The Hermeneutics File*, 58 S. Cal. L.Rev. 211, 216 (1985).

nance Code defines interest as "compensation for the use, forbearance, or detention of money." Tex. Fin.Code Ann. § 301.002(a)(4) (Vernon Supp.2001). Black's Law Dictionary defines fee as a "charge for labor or services." Black's Law Dictionary 629 (7th ed.1999). Is there a difference between compensation for the use of money and a charge for the service of lending money? This Court is quite sure that even the most hair-splitting semantic debate could not produce one. As such, when the lender denominates[4] a line-item charge on a § 50(a)(6)[5] extension of credit as a fee, a fee it shall be.[6]

Defendant makes several arguments against this outcome. First, Defendant argues that the "loan discount and origination charges are interest as a matter of law because they were for the use of money, i.e., the loan." This simply is not helpful. If Defendant's argument is that *but for* the loan these charges would not have been incurred, this is obviously true for *all* the charges made in connection with this loan. If this is not Defendant's argument, this statement does nothing to provide the Court with a reasonable method for discerning between "fees" and "interest." Second, Defendant cites the Texas Administrative Code[7] and Texas case law[8] for the proposition that the loan origination fee and loan discount are treated as interest for the purpose of a usury calculation. While the Court does not dispute this assertion, it is not dispositive of the issue. The Court will not ignore the plain language of the Texas Constitution in favor of usury-law interpretations in the Texas Administrative Code and in Texas case law. *See Doody*, 49 S.W.3d at 344 (stating that when interpreting the Texas Constitution, "we rely heavily on its literal text and must give effect to its plain language.").

The bottom line is this: Defendant charged Plaintiffs $680 and chose to call it

---

**4.** "It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990).

**5.** Defendant cannot claim to be surprised by the fee limitations of § 50(a)(6). This section is mentioned on every page of the "Texas Home Equity Security Instrument" drafted by Defendant, except the last page bearing only the notary's signature and seal.

**6.** The Court fully realizes that this interpretation of § 50(a)(6)(E) will lead to semantic and numerical games (assuming such games are not being played already). This is due to the fact, that in instances such as this one, the stated name of the charge is dispositive, while the purported reason for the charge is irrelevant. This is a natural consequence of attempting to make a distinction between synonymous words, as "fee" and "interest" used in this context are. The semantic games will come in the form of simply changing "loan origination fee" to "prepaid loan origination interest" or some similar title. The numeric games will come in the form of shifting "fees" to "interest" and vice versa. For instance, Defendant could have charged no fees at all on the loan in question. The fees would simply have become a cost of doing business and made up for by charging a higher rate of interest. Conversely, one could foresee a scenario where a lender would shift as much as possible to fees in an effort to advertise an artificially suppressed interest rate. Apparently, the only limits to this game are § 50(a)(6)(E)'s cap on fees and the Texas usury laws.

**7.** *See* 7 Tex. Admin. Code § 1.102(20) and 7 Tex. Admin. Code § 1.707(g).

**8.** *See, e.g., Walker v. Ross*, 548 S.W.2d 447, 450 (Tex.Civ.App.—Fort Worth 1977, writ ref. n.r.c.) (stating "[i]t is clear that where the face amount of the loan is greater than the amount actually advanced, the principal upon which the lender may charge interest is the amount advanced, and the difference (*where there are no valid charges*) is considered prepayment of interest.") (emphasis added).

a "loan origination fee." The Texas Constitution prohibits "fees ... necessary to originate" loans such as this one. The idea that this charge would not fall within the meaning of § 50(a)(6)(E) would seem laughable to the average citizen; and it should. Words have meaning. Sometimes this meaning is vague or ambiguous, but where the words used are *identical*, the inquiry should be over. With the Court's holding that the loan origination fee is a fee necessary to originate this loan, this inquiry is over.

## IV. Remedy

As the extension of credit has been found to be in violation of the Texas Constitution, the Court now turns to the remedy. The Texas Constitution states that "the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply." Tex. Const. art. XVI, § 50(a)(6)(Q)(x). This section goes on to state that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section." Tex. Const. art. XVI, § 50(c). As the extension of credit is in violation of § 50, it is not valid. In addition, Defendant has not availed itself of § 50(a)(6)(Q)(x)'s cure provision within a reasonable time.[9] Therefore, Defendant "shall forfeit all principal and interest of the extension of credit." No distinction is made between principal and interest already paid and that yet to be paid. Therefore, Defendant shall forfeit both sums per

the constitutional requirement that "all" principal and interest be forfeited.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiffs' Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Judgment on the Pleadings is hereby DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant's lien on 9201 Hunters Trace East, Austin, Texas 78758, is hereby found to be VOID and UNENFORCEABLE, thereby quieting the title on this property in favor of Plaintiffs.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs have NO FURTHER OBLIGATION on the promissory note held by Defendant and that Defendant shall REFUND all principal and interest paid on this note to date by Plaintiffs.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs' Motion for Attorneys' Fees is hereby DENIED.

---

**9.** Plaintiffs' counsel first notified Defendant via certified mail dated 15 March 2000 of Defendant's failure to comply with the requirements of § 50(a)(6)(E). The Court finds that the cure provision of § 50(a)(6)(Q)(x) is no longer available to Defendant as 21 months is not a reasonable time.