**In re Larry Gene ADAMS and Tina Marie Adams, Debtors.**

**Larry Gene Adams and Tina Marie Adams, Plaintiffs,**

**v.**

**Ameriquest Mortgage Co., Defendant.**

**Bankruptcy No. 03–20518–RLJ–7.**
**Adversary No. 03–2029.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Jan. 26, 2004.

Larry Gene Adams, Tina Marie Adams, Amarillo, TX, for Plaintiffs.

Anne E. Catmull, Hughes, Watters & Askanase, Houston, TX, for Defendant.

## MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

### Preliminary Statement

The court considers the cross-motions for summary judgment filed by the Plaintiffs Larry and Tina Adams and the Defendant Ameriquest Mortgage Co. This court has jurisdiction of this matter under 28 U.S.C. §§ 1334(b) and 157(b)(2)(B), (K). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2). This Memorandum Opinion contains the court's findings of fact and conclusions of law. FED. R. BANKR.P. 7052 and FED. R. BANKR.P. 9014.

This case is particularly appropriate for disposition by summary judgment as the parties agree that there are no material facts in dispute. Summary judgment is proper if the summary judgment evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Meadowbriar Home, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir.1996).

Larry and Tina Adams (the "Debtors") purchased the home in which they presently live in 1994, granting a purchase money lien for a portion of the purchase price. In 2000, the Debtors refinanced their 1994 note with a home-equity loan from AAMED Funding Group (the "2000 loan"). The 2000 loan refinanced the 1994 purchase money loan and provided additional funds to the Debtors for other purposes. On December 19, 2002, the Debtors refinanced the 2000 loan with a loan from Ameriquest Mortgage Co. ("Ameriquest") (the 2002 loan from Ameriquest will be referred to as the "2002 loan"). The 2002 loan is the loan at issue before the court.

The 2002 loan was not handled as a home-equity loan as contemplated by the

Texas Constitution. It was handled as a simple refinance of a purchase money loan and lien. The deed of trust that was signed in connection with the 2002 loan specifically states as follows: "the loan evidenced by the note is not an extension of credit as defined by section 50(a)(6) or section 50(a)(7), article XVI, of the Texas Constitution." Deed of Trust, § 28, Plaintiffs' Appendix, p. 125. Section 50(a)(6) is the home-equity loan provision of the Texas Constitution.

## Discussion

Section 50(f) of article XVI of the Texas Constitution requires that a refinance of an existing home-equity loan, as defined by subsection (a)(6) of section 50, must also be a home-equity loan. TEX. CONST. art. XVI, § 50(f) (amended 2003). The Debtors argue that the 2002 loan is not a home-equity loan as defined by section 50(a)(6) of the Constitution and therefore the lien granted is invalid as an improper attempt to refinance a prior home-equity loan. The Debtors also contend that Ameriquest's claim should be disallowed. Under the Debtors' theory, the Debtors receive the windfall of a free home. Ameriquest does not dispute that the 2002 loan was not handled as a home-equity loan, but contends it may save its lien by curing the various defects in the 2002 loan that prevent it from being characterized as a home-equity loan. Alternatively, Ameriquest contends it is subrogated to the rights of the prior lienholder.

Section 50(a) of article XVI of the Texas Constitution sets forth the types of loans or extensions of credit that may be validly secured by the borrower's homestead. TEX. CONST. art. XVI, § 50(a) (amended

2003).[1] Subsection 50(a)(1) allows a lien that secures purchase money; subsection 50(a)(4) allows a lien that secures the refinance of an existing valid lien against a homestead (typically a purchase money lien), including a federal tax lien; subsection 50(a)(6), which was added by amendment in 1997, allows home-equity loans and liens. To be valid, a home-equity lien loan must comply with the numerous requirements set forth at section 50(a)(6)(A)–(Q). Of particular relevance here is section 50(a)(6)(Q)(x), the forfeiture and cure provision, which provides that:

> the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply...."

TEX. CONST. art. XVI, § 50(a) (amended 2003).

Section 50(c) states that no mortgage, trust deed, or other lien on the homestead shall be valid unless it secures a debt described by section 50. TEX. CONST. art. XVI, § 50(c) (amended 2003).

The loan at issue before the court falls squarely under section 50(f) as a refinance of a prior home-equity loan. Section 50(f) states:

> A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless the refinance of the debt is

---

1. Section 50 of article XVI of the Texas Constitution was amended in 2003. The parties submit that the version of section 50 prior to the amendment controls. The court agrees. "The laws existing at the time a contract is made becomes a part of the contract and govern the transaction." *Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex. 1987).

an extension of credit described by Subsection (a)(6) of this section.

TEX. CONST. art. XVI, § 50(f) (amended 2003). The refinance of a prior home-equity loan must therefore meet the requirements of section 50(a)(6)(A)–(Q) to result in a valid lien against homestead property. *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex.2000) ("When we interpret our state constitution, we rely heavily on its literal text and must give effect to its plain language."). The Debtors argue that Ameriquest never intended the 2002 loan to constitute a home-equity loan under section 50(a)(6) as evidenced by the recital in the deed of trust and the numerous violations of the requirements found at section 50(a)(6). The funds obtained from the 2002 loan were used to payoff the 2000 loan, which both parties understood at the time the loan was made. Both parties understood the loan to be a refinance of the prior loan against the homestead property. Both parties intended that the refinance result in a lien against the homestead property. The refinanced 2000 loan was itself a home-equity loan. The 2002 loan was, in fact, a refinance of a home-equity loan.

### *Availability of the Section 50(a)(6)(Q)(x) Cure Provision*

■■ The Constitution defines a home-equity loan by the requirements that are imposed upon the lender in making a home-equity loan. TEX. CONST. art. XVI, § 50(a)(6)(A)–(Q) (amended 2003). If these requirements are not met, the lien against the homestead is not valid and the loan is treated as unsecured as to the homestead property. *Doody v. Ameriquest*, 49 S.W.3d 342, 345–46 (Tex.2001). A home-equity loan must be made without personal recourse against the owner. TEX. CONST. art. XVI, § 50(a)(6)(C) (amended 2003). Assuming the non-recourse requirement is met and the lien is held invalid for non-compliance with some other (a)(6)(A)-(Q) requirement, the lien against the homestead property is void, the borrower is not personally liable, and the lender is left without recourse. *Doody*, 49 S.W.3d at 345–46. This is a risk that lenders face in the home-equity loan arena.

■ This raises the forfeiture and cure provision contained at 50(a)(6)(Q)(x), quoted above. Under this forfeiture provision, a lender's failure to comply results in the lender having to not only forfeit the right to collect any future payments called for under the note, but also having to disgorge any amount already paid under the note. *See Thomison v. Long Beach Mortgage Co.*, 176 F.Supp.2d 714, 718 (W.D.Tex. 2001), *vacated by* 2002 WL 32138252 (W.D.Tex.2002).

■ Debtors argue that the cure provision found in section 50(a)(6)(Q)(x) can only be used in connection with a loan that falls under the section 50(a)(6) home-equity loan provision and not the other loans described in section 50(a), such as a purchase money lien under section 50(a)(1), a materialman's lien under section 50(a)(5), or, as in this case, a refinance of a prior home-equity loan under section 50(f). The court disagrees regarding the application of the cure provision in this case. Section 50(f) expressly adopts the requirements of section (a)(6). The cure provision is therefore applicable, just as it is with the remainder of the provisions in section 50(a)(6).

The issue then becomes whether this "cure power" is sufficient to cure the particular defects at issue in this case and save Ameriquest's lien. Debtors allege that the 2002 loan fails to meet several of the seventeen general requirements of section 50(a)(6): that the principal amount of the loan exceeds eighty percent of the fair market value of the property in violation of

section 50(a)(6)(B); that the loan purports to make Debtors personally liable in violation of section 50(a)(6)(C); that the loan is secured by a deed of trust that allows foreclosure without court order in violation of section 50(a)(6)(D); that there was a lack of required notices under section 50(a)(6)(M)(i); that the security instruments securing the loan did not contain a disclosure that the loan was an extension of credit defined by section 50(a)(6) in violation of section 50(a)(6)(Q)(vi); and that neither the Debtors nor Ameriquest signed a written acknowledgment of the fair market value of the property on the date that the loan was made in violation of section 50(a)(6)(Q)(ix). Debtors contend that Ameriquest cannot use the cure provision of section 50(a)(6)(Q)(x) to remedy these defects and validate its otherwise invalid lien. Debtors argue that the cure provision of section 50(a)(6)(Q)(x) only applies to those defects in the loan that the lender can unilaterally remedy on its own accord after-the-fact of the execution of the loan. This argument is not without merit. However, the Texas Supreme Court's opinion in *Doody v. Ameriquest Mort. Co.*, 49 S.W.3d 342 (Tex.2001), convinces this court that the Debtors' argument must be rejected.

In *Doody*, the loan violated section 50(a)(6)(E) because the lender charged closing costs in excess of the three-percent cap. *Id.* at 342–43. About three months after the execution of the loan, the lender discovered the violation and refunded the excess closing costs to the borrower. *Id.* at 344. The borrower then cashed the check from the lender. *Id.* Later, the borrower sued the lender, claiming that the lender's lien was invalid because the loan failed to meet a requirement of section 50(a)(6) at the time of execution, and was therefore void at its inception and not revived by the lender's subsequent remittal of the excess fees. *Id.*

The *Doody* case illustrates the inherent ambiguity in the home-equity loan provisions of section 50(a)(6). If a home-equity loan does not comply with the requirements of section 50(a)(6)(A)–(Q), the *lien* against the homestead property is invalid. *See Thomison v. Long Beach Mortgage Co.*, 176 F.Supp.2d 714, 718 (W.D.Tex. 2001), *vacated by* 2002 WL 32138252 (W.D.Tex.2002). Separately, within one of these requirements is a *forfeiture* provision, whereby non-compliance results in a forfeiture of principal and interest on the note. *Id.* at (a)(6)(Q)(x). The "cure provision" which Ameriquest seeks to utilize speaks only in terms of saving the lender from the risk of *forfeiture*. The issue in *Doody*, then, was whether the cure provision could be used to save the lien. *Doody* reconciled this issue in the lender's favor by holding that an otherwise invalid lien could be resurrected by the lender at a later point in time under the cure provision of section 50(a)(6)(Q)(x). *Id.* at 347. Specifically, the cure provision was held to apply to the three-percent cap requirements, found at section 50(a)(6)(E). *Id.* While the Texas Supreme Court was faced with the applicability of the cure provision as to section 50(a)(6)(E), the opinion speaks broadly regarding obligations of the lender that are "curable", and supports the proposition that Ameriquest may utilize the cure provision in the case at hand. *Id.* at 345–47. *Doody* holds that the cure provision applies to "all of the lender's obligations under the 'extension of credit' including section 50(c)'s requirements that to be valid a homestead lien must secure a debt described by this section." *Id.* at 345. The Court in *Doody* concludes by holding that, once the cure is made, the lender establishes the validity of the lien under section 50(c). *Id.* at 347. Just as *Doody* recognizes the applicability of the cure provision to allow a lender to cure defects

in the loan and thereby validate the lien for purposes of section 50(c), the court construes *Doody* to compel the application of the cure provision to section 50(f).

### Restraints on the "Cure Power"

Debtors argue that the holding of *Doody* should be construed narrowly and this court should limit the cure provision to include only the obligations of the lender that the lender can unilaterally cure, as well as obligations that can, as a practical matter, be cured. Debtors argue that Ameriquest's cure power does not include acts that would require participation by Debtors, such as re-executing a deed of trust that does not allow for non-judicial foreclosure. Debtors point out that there is no way to effectively cure a violation of the twelve-day waiting period found in section 50(a)(6)(M). While these arguments are persuasive, this court's function is to predict how the Texas Supreme Court would ultimately rule on the issue. *See United Parcel Service, Inc. v. Weben Indus., Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986) ("When making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it"). Given the language from the Texas Supreme Court in *Doody,* as well as other considerations, this court's prediction is that the Texas Supreme Court would hold that the cure provision applies to the lender's obligations at issue in this case: section 50(a)(6)(B) (loan not to exceed eighty percent of the fair market value of the homestead), section 50(a)(6)(C) (no personal liability), section 50(a)(6)(D) (foreclosure only by court order), section 50(a)(6)(Q)(vi) (disclosure requirements in security documents), and section 50(a)(6)(Q)(ix) (acknowledgment by owner of fair market value). *See Doody,* 49 S.W.3d at 345. ("the cure provision in section 50(a)(6)(Q)(x) applies to all the lender's obligations under the 'extension of credit' "). *See also id* at 347.

### 1. Unilateral Cure as a Restraint on Section 50(a)(6)(Q)(x)

First, Debtors argue that a lender's power to cure should be construed to apply to only those defects the lender can unilaterally remedy without any required act on the part of the borrower. For instance, in *Doody,* the lender was able to issue a check for the amount the fees exceeded the three-percent cap and forward it to the borrower. *Id.* Debtors argue that such an act on the lender's part is the only type of action that the lender has "the power to do" for purposes of the *Doody* opinion. In particular, Debtors point to language in the *Doody* opinion discussing that an otherwise invalid homestead lien can be made valid at a later date, "if the power to do so exists under our constitution or statutes." *Id.* at 346. The Texas Supreme Court implied, the Debtors argue, that the lender would not always have the "power to cure" a defect in a home-equity loan. A fair reading of the opinion reveals that the Court meant something more general. The Court discussed the general rule that a homestead lien invalid at inception cannot be later revived. *Id.* at 346. The Court expressly recognized that the new cure provision in the home-equity loan context was a change from the prior provisions and created a new power for lenders to use to validate an otherwise invalid lien. *Id.* The Court then stated that to the extent this new power is available, a lender can use it to validate an otherwise invalid home-equity lien. *Id.* What the Court meant by, "if the power to do so exists", is that this cure power only exists in the context of a home-equity loan; there is no such cure power with other homestead liens—such as, for example, a materialman's lien. *Id.* As previously discussed, the Texas Supreme Court spoke quite broadly regarding the availability of section 50(a)(6)(Q)(x) to cure the lender's obli-

gations under section 50(a)(6). *Id.* Even if this court relied solely on this language, the prediction must be that the Texas Supreme Court would allow Ameriquest to use its cure power to save its lien in this case. Other considerations also support this prediction.

For instance, consider the facts in *Doody.* *Id.* The Court allowed the lender to refund the excessive fees. The act of "refunding" inherently includes action on the part of the lender and borrower. A lender cannot deposit the check in the borrower's account on its own, or otherwise force the borrower to accept the refund. *Doody* implies that a lien is not to be held invalid as long as the lender takes proper steps to remedy the defect in the loan, regardless if some act is required on the part of the borrower. *See id.* Because the Texas Supreme Court has shown its support for allowing a lender to use the cure provision to remedy a defect that requires action on the part of the borrower, this court cannot justify the prediction that the Texas Supreme Court would not allow a lender to use the cure provision to remedy a defect in one of the section 50(a)(6)(A)–(Q) requirements merely because it requires action by the borrower.

This result is also supported by the legislative history to the recent constitutional amendment to the relevant provisions of the Texas Constitution.[2] The recent amendment to the Texas Constitution changed the language of the cure provision regarding home equity loans and now states as follows:

> (x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:
>
> > (a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;
> >
> > (b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) or (I) of this subdivision, if applicable;
> >
> > (c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;
>
> (d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;
>
> > (e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of

**2.** See note 1 *supra.*

interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

(f) if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section;

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). The amendment outlines the proper cure procedure for a lender. In comparison to *Doody*, the new version contemplates that a lender may cure an overcharge of the three-percent cap on fees by merely refunding the overcharge. *Id.* at (a)(6)(Q)(x)(a). The amendment also contemplates other situations where the lender can cure defects through a reasonable offer to refinance the original loan in accordance with the applicable rules. *Id.* at (a)(6)(Q)(x)(f). A refinancing of the loan presupposes the borrower's compliance and cooperation. Section 50(a)(6)(Q)(x)(f) is a "catch-all" provision that provides a means to cure non-curable defects in a home-equity loan. *Id.* Since the current cure provisions clearly contemplate the applicability of the cure provisions to any defect in a section 50(a)(6) "extension of credit", it begs the question, What is the relevance of this to the prior version? Did the legislature intend to enlarge or broaden the applicability of the cure provision?

The legislative history to the amendment supports the proposition that the changes to the cure provisions were meant to further clarify already existing rights on the part of the lender. The Committee report of this amendment states as follows:

The [former version of the] Constitution provides that the lender forfeits all principal and interest if a failure to comply with all the lender's obligations is not corrected in a reasonable time. The "cure process" is not otherwise described, either in the Constitution or in statute ... S.J.R. 42 addresses these issues by ... *clarifying the cure process* ... S.J.R. 42 establishes a specific series of provisions through which a lender may cure most failures to comply with the lender's obligations under the home equity provisions of the Constitution.

HOUSE COMM. REPORT, BILL ANALYSIS, TEX. S.J.R. 42, 78th Leg., R.S. (2003) (emphasis added). The constitutional amendment sought to "clarify" various aspects of the cure process and procedure. For instance, the amendment clarified that "reasonable time" for purposes of section 50(a)(6)(Q)(x) is sixty days. The amendment does not otherwise expand a lender's cure power. In fact, the amendment simply illustrates that all of the section 50(a)(6)(A)–(Q) requirements are subject to the cure provision. The amendments are, therefore, consistent with the holding in *Doody*.

■ Given the Supreme Court's opinion in *Doody*, a reasonable application of its analysis to the applicable constitutional provisions, and the legislative history regarding the changes to the home-equity cure provisions, this court finds that a lender is not limited in its cure power to only defects that the lender may unilaterally cure. The borrower may not refuse to comply with a reasonable offer to cure by the lender. Such a holding would allow

the borrower to effectively block the lender's power to cure in many instances.

## 2. Curing "Non-curable" Defects

◼ Debtors contend that some of the requirements as found in section 50(a)(6)(A)–(Q) cannot, as a practical matter, be cured. For instance, Debtors allege that they did not receive the benefit of the twelve-day waiting period as found in section 50(a)(6)(M)(i). They argue there is no way for a lender to correct such a defect, because no subsequent act on the lender's part can "turn back time" to afford the borrower that protection.

To predict how the Texas Supreme Court would rule on this point, this court must give deference to actual language as used by that court. *See United Parcel Service, Inc. v. Weben Indus., Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986). As noted, the *Doody* opinion speaks in terms of applying the cure provision to "all the lender's obligations under the extension of credit." *Doody v. Ameriquest Mort. Co.,* 49 S.W.3d 342, 345, 347 (Tex.2001). Such an application is further buttressed by the legislative history regarding the recent constitutional amendment. The current version was intended to clarify already existing rights of the lender under the cure provision. *See* HOUSE COMM. REPORT, BILL ANALYSIS, Tex. S.J.R. 42, 78th Leg., R.S. (2003). The current version expressly provides for the cure of other defects where the cure itself will not fully fulfill the purpose of the requirement. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). The current version allows for the cure of the twelve-day waiting period through a reasonable offer to redo the transaction. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). Given this authority, this court interprets section 50(a)(6)(Q)(x) as applicable to cure such a defect through a reasonable offer to redo the transaction by the lender.

### *Sufficient Steps to Cure*

#### 1. Reasonable Time

◼ Section 50(a)(6)(Q)(x) provides that a lender has a "reasonable time" after notice in which to act upon its cure power to save an otherwise invalid lien. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) (amended 2003). This time frame begins upon notice by the borrower to the lender of the defective nature of the transaction. *Id. See also Thomison v. Long Beach Mortgage Co.,* 176 F.Supp.2d 714, 718 (W.D.Tex. 2001), *vacated by* 2002 WL 32138252 (W.D.Tex.2002).

◼ Both Larry and Tina Adams testified in their respective depositions that they had not communicated with Ameriquest regarding the defective nature of this loan before filing this adversary proceeding on June 9, 2003. Ameriquest contends that it was entitled to notice of the defective nature of the loan before Debtors filed suit to declare the lien void. The Debtors' complaint contains detailed allegations that apprised Ameriquest of the alleged defects in the loan. Accordingly, the court holds that Ameriquest received notice of the defective loan on the date recited in the certificate of service accompanying the adversary complaint, June 16, 2003.

Ameriquest filed a Motion for Relief From Stay on August 14, 2003. In the motion, Ameriquest sought stay relief so that Ameriquest could send Debtors its "cure letter" which contained an offer to rescind the loan and execute a new loan in accordance with the home-equity loan provisions. A copy of the cure letter was attached to Ameriquest's stay motion. Ameriquest filed the stay motion because of its concern that its cure letter would violate the automatic stay. Ameriquest obtained an order from this court on September 15, 2003, allowing Ameriquest to

make its offer of cure. A copy of the "cure letter" was actually mailed to the Debtors on September 2, 2003. The receipt shows that Debtors received the letter on September 4, 2003.

 Whether Ameriquest acted timely depends on whether it acted in a "reasonable time" after being put on notice of the defective nature of the loan. Tex. Const. art. XVI, § 50(a)(6)(Q)(x) (amended 2003). A "reasonable time" is measured by considering the particular circumstances of the situation. *See, e.g. Barnes v. State,* 832 S.W.2d 424, 426 (Tex.App.–Houston [1st Dist.] 1992, no writ). The court is aware that the 2003 amendment changed "reasonable time" to "sixty days". Tex. Const. art. XVI, § 50(a)(6)(Q)(x). As discussed *supra,* this amendment sought to "clarify" the already existing cure procedure. *See* House Comm. Report, Bill Analysis, Tex. S.J.R. 42, 78th Leg., R.S. (2003). However, even though the Texas Legislature decided to establish a more concrete time-frame in which a lender must exercise its cure power, this court still evaluates the circumstances using a "reasonable time" analysis. Here, Debtors were in bankruptcy and afforded the protections of the automatic stay. Ameriquest, acting out of an abundance of caution, sought stay relief before offering a cure. There also existed the question of whether the Debtors had provided the required notice of the defects. Approximately sixty days after being served with suit and thus notice of its defective lien, Ameriquest initiated its right to cure by filing its motion seeking relief from the automatic stay. The court finds that Ameriquest acted within a "reasonable time" given the circumstances of this case.

## 2. Reasonable Offer

 As previously discussed, this court recognizes a lender's reasonable offer to cure as fulfilling the lender's obligations under section 50(a)(6)(Q)(x) to save an otherwise invalid lien under section 50(a)(6). Debtors contend that section 50(a)(6) was violated as follows: the principal amount of the loan exceeded eighty percent of the fair market value of the property in violation of section 50(a)(6)(B); the loan purports to make Debtors personally liable in violation of section 50(a)(6)(C); the loan is secured by a deed of trust that allows foreclosure without court order in violation of section 50(a)(6)(D); the notices required by section 50(a)(6)(M)(i) were not provided; the security instruments securing the loan did not contain a disclosure that the loan was an extension of credit defined by section 50(a)(6) in violation of section 50(a)(6)(Q)(vi); and neither Debtors, nor Ameriquest, signed a written acknowledgment of the fair market value of the property on the date that the loan was made in violation of section 50(a)(6)(Q)(ix).

The 2003 amendment to section 50 allows the lender to cure many of these defects unilaterally. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x). It also contains a general "catch-all" provision that allows the lender to cure any other defect by refunding or crediting the borrower $1,000 and granting the borrower a right to refinance the balance of the loan with proper modifications. As already discussed, the procedural framework set out in the 2003 amendment was intended to be a clarification of the already existing rights of the lender under the prior version. *See* House Comm. Report, Bill Analysis, Tex. S.J.R. 42, 78th Leg., R.S. (2003). The amendment is consistent with *Doody,* in which the Texas Supreme Court stated that a lender's cure power applied to each of the lender's obligations under section 50(a)(6). *Doody v. Ameriquest Mort. Co.,* 49 S.W.3d 342, 345, 347 (Tex.2001).

In its cure letter, Ameriquest offered to cure the defective loan by rescinding the current loan, forgiving all accrued interest, refunding all out-of-pocket closing costs paid by Debtors, paying other consequential costs such as reasonable attorney's fees, and paying any other indirect costs incurred by Debtors. As part of the offer, Ameriquest offered that Debtors could either refund the principal amount of the loan, or refinance the amount with another loan on the same terms and conditions as the original loan, less any fees, and in compliance with the home equity loan provisions. In the letter, Ameriquest repeatedly refers to the *Doody* case as its legal basis for the offer to cure.

Under the amendment to the Texas Constitution, Ameriquest could have cured several of the defects by simply sending Debtors notice of appropriate changes to the terms of the loan. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). Instead, Ameriquest offered to rescind the loan and execute a new loan at Debtors' request. However, Ameriquest was not afforded the recent 2003 "clarification" of the cure provision when it made the offer to cure. Given the Texas Supreme Court's holding in *Doody* and the ambiguity of the prior cure provision, Ameriquest was justified in believing that it had to make such an offer to properly satisfy the cure provision.

Debtors argue that the letter was merely an offer to settle a litigated dispute. The court disagrees. The letter references the *Doody* opinion and states it constitutes Ameriquest's attempt to cure the defective loan. Ameriquest's offer was based on a reasonable interpretation of the proper course of action for cure. Just as Ameriquest was fully apprised of the defective nature of its loan upon service of the adversary complaint at issue, Debtors were fully apprised of Ameriquest's desire and offer to cure upon service of the cure letter. Ameriquest met its burden under the cure provision by its reasonable offer to cure, and Ameriquest is held to have met its burden under section 50(a)(6)(Q)(x).

### Conclusion

The relief requested by the Debtors' summary judgment motion is denied. Ameriquest's summary judgment is granted and Ameriquest's counsel is instructed to submit a judgment so granting its summary judgment. This ruling renders moot Ameriquest's argument that it is equitably subrogated to the prior lienholder of the Debtors' homestead.