Affirmed and Memorandum Opinion filed January 15, 2008








Affirmed and Memorandum Opinion filed January 15, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00734-CV

____________

 

KELLY LEE SUMMERS, Appellant

 

V.

 

AMERIQUEST MORTGAGE COMPANY, Appellee

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 2005-37522

 



 

M E M O R A N D U M   O P I N I O N

In this home equity mortgage foreclosure case, Kelly Lee
Summers appeals the trial court=s grant of summary judgment in favor of
Ameriquest Mortgage Company.  Summers contends that her home equity loan is
invalid because it violates the Texas Constitution and that an earlier judgment
declaring it valid and enforceable is therefore void.  We affirm.

Factual
and Procedural Background








In July 2002, Summers executed a home equity loan with Ameriquest
secured by a lien on Summer=s homestead property located at 726 Sue
Barnett Drive, Houston, Texas.  The 2002 loan was paid in full when Summers
refinanced it by executing a second home equity loan with Ameriquest in March
2003.  The March 2003
loan was evidenced by two documents, a ATexas Home Equity Note@ (the Anote@) and a ATexas Home Equity Security Instrument@ (the Alien@), both dated March 19, 2003. 

In 2004, Ameriquest filed a declaratory judgment action
against Summers.[1] 
Ameriquest alleged that, after Summers executed the July 2002 loan, she
complained that the loan did not comply with Avarious provisions
of Article XVI, sec. 50 of the Texas Constitution.@[2]  Ameriquest
offered to cure the purported defects in the form of a new loan to refinance
the July 2002 loan, and Summers accepted.  Summers then executed the March 2003
loan pursuant to a settlement and release.[3] 
According to Ameriquest=s pleading, Summers then complained that
the lien evidenced by the Security Instrument was void because it refinanced a
home equity loan less than one year after the June 2002 loan in violation of
Article XVI, section 50(a)(6) of the Texas Constitution, and demanded that
Ameriquest release the lien.  Ameriquest responded to this demand by Aunilaterally
curing any defect in the March 2003 loan by crediting Summers=s account with
$1,000 and offering to make a new loan with Summers as provided by Article XVI,
section 50(a)(6) of the Texas Constitution,@ but Summers
rejected this offer.  Ameriquest sought a declaration that any defects in its
security interest in Summers=s property were cured and the lien against
the property was valid and enforceable.








Summers answered Ameriquest=s declaratory
judgment action and asserted that, because the March 2003 loan closed within
one year of the July 2002 loan in violation of Article XVI, section
50(a)(6)(M)(ii) of the Texas Constitution, the lien was void and the defect
could not be cured. 

Ameriquest moved for summary judgment, and in response
Summers asserted her defense that the lien violated Article XVI, section
50(a)(6)(M)(ii) of the Texas Constitution and was void.  On December 21, 2004,
the trial court granted summary judgment in favor of Ameriquest, concluding that
Ameriquest had established as a matter of law that Athe lien Y is fully valid
and enforceable and secures repayment of the debt therein described by creation
and continuation of a lien against [Summers=s] homestead
property.@  Summers did not appeal this judgment.

In June 2005, Ameriquest sued Summers for judicial
foreclosure after she defaulted on the loan.  Summers answered and again
asserted that the loan was invalid under Article XVI, section 50(a)(6)(M)(ii)
of the Texas Constitution, because the second loan closed within one year of
the first loan, and the defect could not be cured. 

Ameriquest moved for summary judgment on its request for
judicial foreclosure.  It also asserted that Summers=s defense was
barred by the doctrine of res judicata, and attached as evidence the pleadings
and judgment from the 2004 declaratory judgment action.  In response, Summers
again asserted that the lien securing the March 2003 loan violated Article XVI,
section 50(a)(6)(M)(ii) of the Texas Constitution, and that this defect could
not be cured.  Further, Summers asserted that the trial court=s judgment from
the earlier action was void because it contradicted a provision of the Texas
Constitution and so could not form the basis for a claim of res judicata.  In
reply, Ameriquest asserted that, even if the lien was invalid initially,
Summers ignored the provisions of the Texas Constitution that enable lenders
like Ameriquest the opportunity to cure defects. 








The trial court granted a final summary judgment in favor
of Ameriquest.  Summers moved for a new trial and the trial court held a
hearing on the motion, but the record does not reflect whether the motion was
denied or was overruled by operation of law.  This appeal followed.

Analysis
of the Issues

On appeal, Summers raises two issues, which we quote
verbatim:  (1) Can a home equity lien be valid when it clearly fails to comply
with a constitutional requirement and fails to explain why that portion of the
Constitution should be ignored? and (2) Can a void summary judgment be upheld? 
We address these issues below.

I.        The
Validity of the Lien

In this issue, Summers does not dispute that she was in
default on the home equity loan.  Instead, she argues that the lien is invalid
because it violates Article XVI, section 50(a)(6)(M)(ii) of the Texas
Constitution.  In response, Ameriquest contends this argument was previously
litigated on the merits in the 2004 declaratory judgment action, and therefore
it is barred by principles of res judicata and collateral estoppel.  In
considering this issue, we apply the well-established standard of review
applicable to a traditional summary judgment.  See Tex. R. Civ. P. 166a; Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548B49 (Tex. 1985). 

A.      The
Applicable Law








In 1997, the Texas Constitution was amended to allow home
equity loans against a homestead.  Doody v. Ameriquest Mortgage Co., 49
S.W.3d 342, 343 (Tex. 2001).  The amendment details the terms and conditions
for a home equity loan and the borrower=s and lender=s rights and
obligations.  Doody, 49 S.W.3d at 343.  Relevant here, the amendment
included the requirement that a home equity loan could not close before Athe first
anniversary of the closing date of any other extension of credit described by
Subsection (a)(6) of the section secured by the same homestead property.@  Tex. Const. art.
XVI, ' 50(a)(6)(M)(ii)
(amended 2007) (current version at Tex. Const. art. XVI, '
50(a)(6)(M)(iii)).[4]  


One of the amendment=s conditions for a
lien=s validity is that
the lender or any noteholder for the extension of credit shall forfeit all
principal and interest of the extensions of credit if it fails to comply with
its obligations under the extension of credit within a reasonable time after it
is notified by the borrower of its failure to comply.  Doody, 49 S.W.3d
at 343; Tex. Const. art. XVI, ' 50(a)(6)(Q)(x) (amended 2003).  Section
50(a)(6)(Q)(x)=s cure provision provides a means for the lender to
correct mistakes within a reasonable time in order to validate a lien securing
a section 50(a)(6) extension of credit.  Doody, 49 S.W.3d at 346.  

B.      Res
Judicata and Collateral Estoppel

In both the present case and the 2004 declaratory judgment
action, Summers argued that section 50(a)(6)(M)(ii)=s requirement that
a home equity loan could not close within one year of another home equity loan
on the same homestead property renders the lien invalid, and because the
problem is a temporal one, it cannot be retroactively cured.  We agree with
Ameriquest that the doctrine of res judicata bars Summers from relitigating
this claim in this case. 








Broadly speaking, res judicata is the generic term for a
group of related concepts concerning the conclusive effects given final
judgments.  Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.
1992).  Within this general doctrine, there are two principal categories:  (1)
claim preclusion (also known as res judicata); and (2) issue preclusion (also
known as collateral estoppel).  Id.  Res judicata, or claim preclusion,
prevents the relitigation of a claim or cause of action that has been finally
adjudicated, as well as related matters that, with the use of diligence, should
have been litigated in the prior suit.  Id.  Issue preclusion, or collateral
estoppel, prevents relitigation of particular issues already resolved in a
prior suit.  Id. 

To apply, res judicata requires proof of (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of
parties or those in privity with them; and (3) a second action based on the
same claims as were raised or could have been raised in the first action.  Amstadt
v. U.S. Brass Corp, 919 S.W.2d 644, 652 (Tex. 1996).  For the doctrine of
collateral estoppel to bar re-litigation of an issue, it must be proved that
(1) the facts sought to be litigated in the second action were fully and fairly
litigated in the first action, (2) those facts were essential to the judgment
in the first action, and (3) the parties who litigated in the second action
were cast as adversaries.  Sysco Food Servs. v. Trapnell, 890 S.W.2d
796, 801 (Tex. 1994).  The party asserting these defenses has the burden to
present evidence that they apply.  See In re H.E. Butt Grocery Co., 17
S.W.3d 360, 377 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding) (collateral estoppel); Bell v. Moores, 832 S.W.2d 749, 754
(Tex. App.CHouston [14th Dist.] 1992, writ denied) (res
judicata).








Ameriquest=s summary judgment evidence showed that in
the 2004 action, it sought a declaratory judgment to resolve Summers=s claim that
Ameriquest=s lien was invalid.  Summers answered the suit and
pleaded that the lien violated section 50(a)(6)(M)(ii) because the lien was
closed less than one year after Ameriquest closed an earlier home equity loan
to Summers.  Based on the evidence before it, the trial court concluded as a
matter of law that the lien securing the March 2003 loan was valid and
enforceable.[5] 
Summers did not appeal the trial court=s judgment in that
action.

Summers does not dispute that the 2004 declaratory judgment
action litigated on the merits Summers=s defense that
Ameriquest=s lien was invalid under section 50(a)(6)(M)(ii)Cthe identical
issue she raises as a defense in the present case.  The parties in both are
identical and the judgment was final.  Thus, the trial court in the present
case would not have erred in concluding that Summers=s defense was
barred by the principles of res judicata and collateral estoppel.








Even if the trial court rejected Ameriquest=s affirmative
defense and ruled on the merits of Summers=s complaintCthat the lien is
invalid under Article XVI, section 50(a)(6)(M)(ii) because it was closed less
than one year after Ameriquest closed the earlier home equity loan to SummersCwe would be constrained
to conclude that the trial court did not err in rejecting this complaint, given
the Texas Supreme Court=s broad pronouncement in Doody that
Asection
50(a)(6)(Q)(x) is a cure provision that applies to all of section 50(a) and
. . . operates as a cure provision that validates a lien securing a section
50(a)(6) extension of credit.@  Doody, 49 S.W.3d at 345B46 (emphasis
added); see also Adams v. Ameriquest Mortgage Co., 307 B.R. 549, 558
(N.D. Tex. 2004) (applying broad language of Doody to reject debtors= argument that
some requirements found in section 50(a)(6)(A)B(Q) cannot be
cured because no subsequent act by the lender can A>turn back time=@).  The Doody
court=s pronouncement
that the cure provision applies to all of section 50(a)(6) would necessarily
include section 50(a)(6)(M)(ii)=s requirement that two home equity loans
must not close within one year.  Thus, Summers=s argument that
the temporal defect could never be cured must fail.  

Further, we note that a more recent amendment to the cure
provision of section 50(a)(6)(Q)(x), setting out the particular cure Ameriquest
offered, provides additional support for this conclusion.[6] 
Of particular relevance is the following:

(x) except as provided by Subparagraph (xi) of this
paragraph, the lender or any holder of the note for the extension of credit
shall forfeit all principal and interest of the extension of credit if the
lender or holder fails to comply with the lender=s or holder=s obligations under the extension of credit and fails to
correct the failure to comply not later than the 60th day after the date the
lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any
overcharge paid by the owner under or related to the extension of credit if the
owner has paid an amount that exceeds an amount stated in the applicable
Paragraph (E), (G), or (O) of this subdivision;

***

(f) if the failure
to comply cannot be cured under Subparagraphs (x)(a)B(e) of this
paragraph, curing the failure to comply by a refund or credit to the owner
of $1,000 and offering the owner the right to refinance the extension of credit
with the lender or holder for the remaining term of the loan at no cost to the
owner on the same terms, including interest, as the original extension of
credit with any modifications necessary to comply with this section or on
terms on which the owner and the lender or holder otherwise agree that comply
with this section Y .








Tex.
Const. art. XVI, ' 50(a)(6)(Q)(x) (emphasis added). 
Referencing the amendment=s legislative history, courts have
determined that this amendment was intended Ato clarify already
existing rights of the lender under the cure provision@ and Aexpressly provides
for the cure of other defects where the cure itself will not fully fulfill the
purpose of the requirement.@  See Adams, 307 B.R. at 558; Fix,
2007 WL 4126919, at *5.  This conclusion is consistent with the Texas Supreme
Court=s pronouncement in
Doody that the cure provision applies to Aall the lender=s obligations
under the extension of credit.@  Doody, 49 S.W.3d at 345, 347.

Therefore, the trial court could have correctly concluded
that Ameriquest was entitled to correct its failure to comply with its
constitutional obligations within a reasonable time after Summers notified it
that the lien did not comply with section 50(a)(6)(M)(ii)=s requirement that
two home equity loans must not close within one year.  Doody, 49 S.W.3d
at 343; Fix, 2007 WL 4126919, at *6B7 (affirming
summary judgment for lender on ground that it properly and timely offered to
cure constitutional defects in loan under pre-2003 amendment version of section
50(a)(6)(Q)(x) of Texas Constitution).  Ameriquest made an offer to cure
Summers=s complaint and
validate the lien, but Summers rejected it.  Summers complains that the cure
offered was inapplicable because the constitutional amendment specifically
providing for it was not enacted until after the home equity loan was
executed.  But, other than complaining that a temporal problem cannot be curedCa position that is
at odds with DoodyCSummers does not contend that the cure
offered was unreasonable under the then-existing version of section
50(a)(6)(Q)(x).

We overrule Summers=s first issue. 

II.       The
Validity of the Judgment








In her second issue, Summers contends the trial court=s judgment in the
earlier 2004 declaratory judgment action is void because it violates a specific
provision of the Texas Constitution, and therefore it cannot be given preclusive
effect.[7] 
Ameriquest contends the earlier judgment is not void and Summers=s argument is an
impermissible attack on the earlier judgment.  We agree with Ameriquest.

To support her argument that a plain reading of section
50(a)(6)(M)(ii) renders the March 2003 lien invalid because it was part of a
home equity loan closing less than one year after the June 2002 home equity
loan closing, Summers cites to the Doody court=s discussion of
the general rules courts apply when interpreting the Texas Constitution.  See
Doody, 49 S.W.3d at 344.  However, this citation does not aid Summers
because the meaning of this provision is not disputed.  As discussed above, the
dispute concerns whether Ameriquest was entitled to cure its failure to comply
with this provision, and as we have determined, the Doody court=s interpretation
of the Texas Constitution=s cure provision is at odds with Summers=s position.

Next, Summers cites to two cases involving void judgments
in other contexts.  See In re Hamel, 180 S.W.3d 226, 227B28 (Tex. App.CSan Antonio 2005,
orig. proceeding) (holding relator entitled to writ of mandamus to vacate turnover
order based on underlying void default judgment); In re Jamilah, Nos.
01-05-00521-CV, 01-05-00522-CV, 2005 WL 1704506, at *3 (Tex. App.CHouston [1st
Dist.] 2005, orig. proceeding) (mem. op.) (holding final judgment void because
automatic bankruptcy stay deprived court of jurisdiction over debtor and his
property).  However, neither of these cases demonstrate that a trial court=s judgment that
conflicts with a constitutional provision is void.  








Generally, as long as the court entering a judgment has
jurisdiction of the parties and the subject matter and does not act outside its
capacity as a court, its judgment is not void. Reiss v. Reiss, 118
S.W.3d 439, 443 (Tex. 2003).  Errors other than lack of jurisdiction, such as a
court=s action contrary
to a statute, constitutional provision, or rule of civil or appellate procedure
render the judgment merely voidable or erroneous, so that it may be corrected
through the ordinary appellate process or other proper proceedings.  See Id.,
118 S.W.3d at 443; Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.
1990); Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987).  Unless the
judgment is void because the court lacked jurisdictional power to render it, a
judgment that has become final can only be set aside by appeal or bill of
review.  McEwen v. Harrison, 345 S.W.2d 706, 710 (Tex. 1961); see
also Nguyen v. Intertex, Inc., 93 S.W.3d 288, 294B96 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (holding appellant=s claims that
earlier judgment was void because the pleadings were defective and he was not
properly served were not jurisdictional challenges and therefore judgment had
to be attacked by bill of review); Shoberg v. Shoberg, 830 S.W.2d 149,
152 (Tex. App.CHouston [14th Dist.] 1992, no pet.) (rejecting
appellant=s contention that lien in prior judgment was void
because it violated the Texas Constitution and holding that a defense to a
judgment debt on the ground that the prior judgment is erroneous is an
impermissible collateral attack).

Here, Summers makes no argument that the trial court which
signed the judgment in the 2004 declaratory judgment action lacked jurisdiction
over the parties or the subject matter, or was acting without authority as a
court.  Moreover, our review of the record reveals nothing that would indicate
any lack of jurisdiction.  Summers did not appeal this judgment.  Therefore,
Summers may not attack the judgment as void in the present case.

We overrule Summers=s second issue.

III.      Ameriquest
Was Entitled to Summary Judgment








Ameriquest=s summary judgment evidence demonstrated
that Summers was obligated on the note and lien with Ameriquest, she was in
default, and she did not cure the default after Ameriquest notified her of the
default.  Summers did not contest that she was in default on the loan.  Thus,
Ameriquest was entitled to judgment establishing the balance due under the note
and lien.  Ameriquest also demonstrated that it was entitled to judicial
foreclosure and an order permitting it to sell the property as provided in the
home equity loan documents. 

We overrule Summers=s issues and
affirm the trial court=s judgment.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed January 15, 2008.

Panel
consists of Justices Yates, Fowler, and Guzman.









[1]  The documents in the record from the 2004 action are
styled Ameriquest Mortgage Company v. Kelly Lee Summers, Cause No.
2004-32742, in the 113th District Court of Harris County, Texas.





[2]  In the statement of facts in her appellate brief and
elsewhere, Summers makes various claims concerning the reasons for the second
home equity loan, including alleged Alast
minute demands for repairs to the house,@
but offers no citations to the record to substantiate them.





[3]  The settlement and release agreement is not included
in the summary judgment record.





[4]  Unless otherwise indicated, citations to provisions
of the Texas Constitution are to the then-existing provisions applicable to the
parties.





[5]  The evidence considered by the trial court in the
2004 declaratory judgment action apparently included Ameriquest=s cure letter of April 2, 2004, in which it sought to
respond to Summers=s complaints by crediting her loan with $1,000 and
offering her the right to refinance the loan under the same terms as the
original loan, modified as necessary to comply with section 50(a)(6) of the
Texas Constitution.  However, Ameriquest=s
motion for summary judgment in the present case did not include the exhibits
attached to its motion for summary judgment in the 2004 action.  Nevertheless,
Summers does not dispute that Ameriquest=s
motion for summary judgment included this letter and, in fact, attaches a copy
of the letter to her appellate brief and characterizes it as Ameriquest=s Aactual
settlement offer.@  This letter is marked AExhibit E,@ consistent with the AExhibit E@ referenced in Ameriquest=s motion for summary judgment as the cure letter. 
Thus, the trial court could have concluded that Ameriquest=s offer to cure validated the lien.  See Doody,
49 S.W.3d at 346 (stating that section 50(a)(6)(Q)(x)=s cure provision provides a means for a lender to
correct mistakes within a reasonable time in order to validate a lien securing
a section 50(a)(6) extension of credit). 





[6]  This amendment does not apply to the contracts
between Ameriquest and Summers, which were executed before the effective date
of the amendment.  See Fix v. Flagstar Bank, FSB, ___ S.W.3d ___, No.
2-07-030-CV, 2007 WL 4126919, at *5B6
(Tex. App.CFort Worth Dec. 13, 2007, n.p.h.) (holding 2003
amendments to notice provision of article XVI, section 50(a)(6)(Q)(x) of Texas
Constitution did not apply retroactively). 





[7]  In a separate section of her brief, Summers also contends that the
trial court=s ruling fails to articulate an Aexcuse@ for the lien=s validity, and so fails to Apreserve, protect, and defend the
Constitution.@ Summers further posits that the trial court=s ruling conflicts with its oath of office by making Aan unsubstantiated ruling that is at odds with the
clear wording of the constitution.@ 
These arguments appear to be directed at the trial court=s judgment being appealed.  However, to the extent it
is necessary to address these arguments, we conclude they are meritless because
we have determined that the trial court did not err in granting Ameriquest=s motion for summary judgment.