Daniel K. FIX and Barbara J. Fix, Appellants

v.

FLAGSTAR BANK, FSB; First American Title Insurance Company of Texas; and First Horizon Home Loan Corporation, Appellees.

No. 2–07–030–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 21, 2007.

Rehearing Overruled Dec. 13, 2007.

Robert D. Lybrand, Coppell, TX, for Appellant.

Walter S. Fortney, for Flagstar Bank, FSB and First Horizon Home Loan Corporation.

Law, Snakard & Gambill, P.C., Walter S. Fortney, Grant A. Bannen, Fort Worth, TX, for Appellee.

Panel B: LIVINGSTON, WALKER and McCOY, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

This is an appeal from a summary judgment involving the refinance of a home equity loan. Appellants Daniel and Barbara Fix brought suit to force Appellees Flagstar Bank (Flagstar), First American Title Insurance Company of Texas (First American), and First Horizon Home Loan Corporation (Horizon) to forfeit their rights to receive payment from a refinance of a home equity loan issued by Flagstar to the Fixes in a transaction closed by First American and later assigned to Horizon. In ten issues stemming from the claim that the refinance contract violated two provisions of the Texas constitution, the Fixes argue that the trial court incorrectly granted summary judgment in favor of all three companies and incorrectly denied summary judgment in their favor. We will affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In March 2002, the Fixes obtained a $288,000 home equity loan from Liberty Lending, LLC (the "first loan"), which was later assigned to Flagstar. Less than one year later, in January 2003, the Fixes refinanced the first loan with a conventional loan through Flagstar in a transaction closed by First American (the "second loan"). It is undisputed, however, that the second loan violated two provisions of the Texas constitution. First, it was executed within less than one year's time after the first loan was executed. *See* TEX. CONST. art. XVI, § 50(a)(6)(M)(iii) (Vernon Supp. 2007). Second, it was in the form of a conventional loan, with provisions allowing for personal liability against the Fixes and

nonjudicial foreclosure. *See id.* § 50(a)(6)(C), (D).

Several months after the second loan was executed, in December 2003, Mr. Fix and the vice president of Flagstar had a phone conversation about the legality of the second loan. Mr. Fix alleges that he told the vice president that the loan violated the two provisions of the Texas constitution discussed above. The vice president, however, maintains that the only topic of their phone conversation was the way in which title was held on the second loan.[1]

The day after the December phone conversation, the vice president sent a letter to the Fixes saying that she and Mr. Fix had engaged in a phone conversation as to the validity of the Deed of Trust (without going into the details of the conversation) and that she had mailed a letter of inquiry to First American, the title insurer.

Claims counsel for First American also mailed the Fixes a letter saying that Flagstar had informed him that the Fixes contested the legality of the second loan (again, without specifying the grounds of the illegality) and that regardless of the validity of the second loan, Flagstar was subrogated to the first loan, which was indisputably valid. In reply, Mr. Fix sent a letter to Flagstar and First American detailing the two constitutional grounds for dispute of the second loan. This letter, which was sent in February 2004, constituted the first written notice given by the Fixes regarding the potential constitutional illegalities.

Twenty-one days after receiving the February letter from Mr. Fix, the vice president of Flagstar sent the Fixes a letter offering to cure the constitutional violations via a new home equity loan re-

---

1. Specifically, title was in the individual names of Daniel and Barbara Fix rather than in the name of the family trust, implicating issues beyond this appeal.

closed at a rate equal to or better than the rate of the second loan at no cost to the Fixes and to pay the Fixes $1,000. The letter also stated that First American would draft the new loan instrument and close the transaction for free. The Fixes refused, in writing, Flagstar's and First American's offer to cure and instead asked Flagstar to forfeit the entire amount of the second loan, the principal of which was approximately $287,000, in addition to all interest.

Flagstar and First American declined the Fixes' offer, and the Fixes brought suit to compel forfeiture. The Fixes also claimed that Flagstar and First American violated the Texas Deceptive Trade Practices Act (DTPA). Finally, the Fixes brought suit against Horizon, to whom the Fixes' loan was assigned in February 2005, more than two years after the parties executed the disputed contract. All parties moved for summary judgment. The trial court denied the Fixes' traditional motion for summary judgment, granted Flagstar's and First American's traditional motions for summary judgment, and granted Horizon's no-evidence motion for summary judgment. The Fixes now appeal.

### III. STANDARDS OF REVIEW

#### A. Traditional Summary Judgment Motion Standard

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We will not consider evidence that favors the movant's position unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

We will affirm the summary judgment only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *see* TEX.R. CIV. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affir-

mative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004).

■ When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co.*, 164 S.W.3d at 661. The reviewing court should render the judgment that the trial court should have rendered. *Id.*

### B. No–Evidence Motion for Summary Judgment Standard

■ After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex.R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

■ When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d

291, 292 (Tex.2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

### IV. NO RETROACTIVE APPLICATION OF THE CONSTITUTIONAL AMENDMENT

■ Before reaching the issues presented by the Fixes, we must first determine which version of the Texas constitution governs our disposition of this case. *See, e.g., Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex.1996) (refusing to apply constitutional amendments to loan rights fixed prior to the effective date of the amendments); *accord Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex.2002) (addressing whether a statutory amendment applied retroactively); *Beck v. Beck*, 814 S.W.2d 745, 750 (Tex.1991) (applying a constitutional amendment retroactively). Because the determination of which version of the constitutional amendment applies is a question of law, we will review this issue de novo. *See Subaru of Am., Inc.*, 84 S.W.3d at 219; *Benchmark Bank*, 919 S.W.2d at 660; *Beck*, 814 S.W.2d at 750.

The second loan was executed in January 2003. At that time, the Texas constitution provided that

> the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit *within a reasonable time* after the lender or holder is notified by the borrower of the lender's failure to comply.

Act of May 24, 2003, 78th Leg., R.S., S.J.R. 42, 2003 Tex. Gen. Laws 6219

(amended 2003) (current version at Tex. Const. art. XVI, § 50(a)(6)(Q)(x)) (emphasis added). This section of the constitution did not include any specific provisions directing a lender *how* to cure a loan's constitutional defect or setting a time limitation on *when* a cure must be tendered. *See id.*

In September 2003, the citizens of Texas voted to amend this section. In addition to adding specific ways by which a lender or holder could cure a home equity loan's constitutional violations, the amendment changed the "reasonable time" period standard to require curing action within a more specific, sixty-day time period. *Id.* The question presented by this case is whether these 2003 changes retroactively apply to Flagstar and First American's offer to cure the constitutional defects in the Fix–Flagstar contract, which was executed before the changes were passed.

▮▮▮ When we interpret our state constitution, we rely heavily on its literal text and must give effect to its plain language. *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 354 (Tex.2000). We strive to give constitutional provisions the effect their makers and adopters intended. *Id.* In construing a constitutional amendment, we may also consider its legislative history. *Id.*

▮▮▮ Generally, constitutional amendments and statutes operate prospectively. Tex. Const. art. XVII, § 1(c) (reciting that a constitutional amendment "shall become a part of [the][c]onstitution" when it appears that "a majority of the votes cast have been cast in favor of [the] amendment"); *Benchmark Bank*, 919 S.W.2d at 660 (refusing to apply a constitutional amendment retroactively); *Deacon v. City of Euless*, 405 S.W.2d 59, 61 (Tex. 1966) (addressing whether laws may apply retroactively); *Cox v. Robison*, 105 Tex. 426, 439, 150 S.W. 1149, 1156 (1912)

(same). They may operate retroactively, however, when it is apparent that the makers and adopters intended retroactive application of the amendment, provided retroactive application does not impair vested rights. *Deacon*, 405 S.W.2d at 61; *Cox*, 105 Tex. at 439, 150 S.W. at 1156. Without such clear intent, retroactive application is commonly regarded with disfavor and should occur "only where the public policy is so clearly and broadly stated as to be unmistakable." *Beck*, 814 S.W.2d at 750 (Cook, J., concurring); *see Deacon*, 405 S.W.2d at 61.

▮▮▮ Indeed, public policy is a driving force in determining whether retroactive application is proper. It is well-established that laws in effect at the time a contract is entered into should govern the fulfillment of the contract. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987). This doctrine is based on the presumption that the parties to a contract knew and took into consideration the law in effect at the time of contract. *See Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376 (Tex.App.-Fort Worth 2002, pet. denied). Therefore, courts are reluctant to change the rights and obligations of parties from those originally agreed to by retroactively applying a change in the original law. *See id.*

An example of a constitutional amendment requiring retroactive application is found in the *Beck* case, in which the supreme court evaluated the 1980 amendment to article XVI, section fifteen of the Texas constitution, which allowed spouses to enter into premarital agreements. Tex. Const. art. XVI, § 15 (amended 1980); *Beck*, 814 S.W.2d at 745. In that case, a husband and wife entered into a premarital agreement in 1977. *Beck*, 814 S.W.2d at 746. At that time, although section 5.41(a) of the family code authorized such

agreements, they were illegal under the Texas constitution. *Id.* at 748–49. In 1980, the citizens of Texas voted to amend article XVI, section fifteen so as to legalize premarital agreements. *Id.* at 747. Thereafter, the husband died in 1981, and the executor of his estate brought suit to have the premarital agreement declared invalid. *Id.* at 746. The supreme court looked to the legislative history and public policy behind the constitutional amendment and, applying the doctrine of implied validation to family code section 5.41(a), determined that retroactive application of the constitutional amendment to the premarital agreement at issue was warranted. *Id.* at 746, 749. Looking at testimony presented to the legislature that one purpose of the amendment was "to allow people to do what they wanted to do all along," the supreme court determined that the makers and adopters intended retroactive application of the amendment. *Id.* at 748.

Apart from the constitutional amendment dealing with the implied validation of family code section 5.41(a), appellate courts of this state have seldom allowed retroactive application of a constitutional amendment. For example, in one case, the supreme court dealt with a federal tax lien on a homestead. *Benchmark Bank,* 919 S.W.2d at 660. By the time the case made its way to the supreme court, the people of Texas had approved an amendment that would have been dispositive of the issue, allowing the tax lien. *Id.* at 660. The supreme court, however, refused to retroactively apply the amendment be-

cause the tax lien and the lender's right to recover were fixed before the amendment's adoption. *Id.*

Likewise, in evaluating the 2003 amendment to the notice provision of article XVI, section 50(a)(6)(Q)(x), the exact provision applicable here, the Bankruptcy Court for the Northern District of Texas explicitly refused retroactive application of the amendment creating the sixty-day time period for a cure. *See Adams v. Ameriquest Mortgage Co.,* 307 B.R. 549, 559 (Bankr. N.D.Tex.2004). The court in *Adams* looked to the legislative history of the 2003 amendment and decided that the purpose of the amendment was merely to clarify the cure process to be utilized by a lender, not to retroactively superimpose a series of procedural hoops on lenders who had entered into home equity loans prior to September 2003. *Id.* at 559.

■ In determining whether retroactive application of the 2003 amendment is appropriate in the case at bar, we first look at the literal language of the amendment. *See Stringer,* 23 S.W.3d at 354. The face of the amendment nowhere indicates that the makers and adopters intended retroactive application. Furthermore, unlike the legislative history of the constitutional amendment in *Beck,* the legislative history of the constitutional amendment in this case indicates that the makers meant it as nothing more than a "clarif[ication of] the cure process." HOUSE COMM. REPORT ON FINANCIAL INSTITUTIONS, Comm. Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003).[2] Furthermore, there is no overriding social

---

**2.** Those proposing the amendment discussed its purpose as follows:

> The Constitution provides that the lender forfeits all principal and interest if a failure to comply with all the lender's obligations is not corrected in a reasonable time. The "cure process" is not otherwise described, either in the Constitution or in statute …

> [the bill proposing the amendment] addresses these issues by authorizing home equity lines of credit … [and] clarifying the cure process.

HOUSE COMM. REPORT ON FINANCIAL INSTITUTIONS, Comm. Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003).

policy in favor of retroactive application. Therefore, retroactive application of the 2003 amendment is not warranted, and instead, we apply the version of the constitution in force at the time the Fixes and Flagstar entered into the contract.[3] *Benchmark Bank,* 919 S.W.2d at 660 (refusing to apply a constitutional amendment when a party's rights were fixed before the amendment's adoption).

### V. OFFER TO CURE

As discussed above, the version of section 50(a)(6)(Q)(x) of the Texas constitution in effect at the time the Fixes and Flagstar executed the loan agreement mandated that a lender forfeit the principal and interest of a home equity loan that contained constitutional defects if the borrower notified the lender of the lender's failure to comply with its obligations under the constitution, and the lender did not correct the defects within a reasonable time. Act of May 24, 2003, 78th Leg., R.S., S.J.R. 42, 2003 Tex. Gen. Laws 6219 (amended 2003). The section did not set forth specific cure provisions; those were enacted with the passage of the September 2003 amendment. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) (amended 2003).

Our supreme court analyzed the pre–2003 amendment version of section 50(a)(6)(Q)(x) in the *Doody* case. *Doody v. Ameriquest Mortgage Co.,* 49 S.W.3d 342 (Tex.2001). In that case, the supreme court, answering certified questions from the United States Court of Appeals for the Fifth Circuit, evaluated a home equity loan entered into in January 1998. *Id.* at 343. Approximately three months after the parties executed the loan, the lender discovered that it had violated a provision of the Texas constitution by charging too much in closing costs. *Id.* To cure this error, the lender refunded the excess amount to the borrower. *Id.* The borrower brought suit to compel forfeiture of the principal and interest of the loan in accordance with section 50(a)(6)(Q)(x). *Id.*

In interpreting section 50(a)(6)(Q)(x), the supreme court determined that the section provided a lender with a reasonable opportunity to cure defects in the original loan contract. *Id.* at 346. This cure power gave lenders the ability to cure not only the particular defect at issue but also to validate the entire lien. *Id.* at 347.

Assuming that the December phone call between Fix and the vice president of Flagstar constituted sufficient notice of the loan's constitutional violations,[4] Flagstar and First American responded within, at the latest, approximately three months of receiving notice. During these months,

---

**3.** Because we have held that the makers and adopters of the cure provisions set forth in the post–2003 amendment version of section 50(a)(6)(Q)(x) did not intend for the amendment to apply retroactively to home lending contracts executed prior to September 12, 2003, analysis of an Ex Post Facto Clause violation (including whether the changes are remedial in nature) is unnecessary. *Cf., e.g., Sims v. Adoption Alliance,* 922 S.W.2d 213, 215–16 (Tex.App.-San Antonio 1996, writ denied) (determining whether a statutory amendment was intended to be retroactive before addressing whether its retroactive application would violate the constitutional prohibition against ex post facto laws).

**4.** We note that the explicit provisions of the Fix–Flagstar contract require *written* notice of any defects in the contract or in the performance of the contract and that the contract's forbearance clause would make waiver of this right to written notice difficult on these facts. Nonetheless, proof of the exact date on which the Fixes gave notice and whether Flagstar and First American waived their right to receive written notice is not necessary to support the trial court's summary judgment because the pre–2003 amendment version of section 50(a)(6)(Q)(x) controls, and that version required only that Flagstar and First American respond within a "reasonable time," which, as set forth below, they did.

the record indicates that there was communication between the Fixes and First American and between counsel for Flagstar and the vice president of First American regarding the loan. We additionally note that Flagstar and First American acted to cure defects in the second loan within the same three-month time period in which the lender in *Doody* acted to cure the Doody's home equity loan defect. The supreme court determined that the lender in *Doody* had cured within a reasonable time. *Id.* at 344, 347. Consequently, applying the pre–2003 amendment version of section 50(a)(6)(Q)(x), we hold that the summary judgment evidence here conclusively establishes that Flagstar and First American's offer to cure occurred within a reasonable time period.

Furthermore, to cure the defects in the second loan, Flagstar offered to redo the Fixes' loan contract to bring it into compliance with the Texas constitution, pay the Fixes $1,000, and give the Fixes at least the same or a better interest rate than the rate set in the second loan. First American additionally offered to reclose the transaction at no cost to the Fixes.[5] Applying the pre–2003 amendment version of section 50(a)(6)(Q)(x) of the Texas constitution, the summary judgment evidence conclusively establishes that this offer to cure by Flagstar and First American properly constituted a sufficient offer to cure the defects in the second loan.[6]

We note that all parties in this appeal extensively discuss the *LaSalle* case. *See LaSalle Bank Nat'l Ass'n v. White*, 217 S.W.3d 573 (Tex.App.-San Antonio 2006, pet. filed). That case, however, has no application here. The alleged unconstitutionality of the loan in *LaSalle* was based on the agricultural-use provision in section 50(a)(6)(I), not on section 50(a)(6)(Q)(x). *See id.* at 577–78. Furthermore, the lender in the *LaSalle* case never made *any* offer to cure, unlike Flagstar and First American here. *Id.* The appellate court in *LaSalle* was therefore forced to consider an issue that we need not reach—whether equitable subrogation is appropriate in the context of home equity loan contracts (issues one and two presented by the Fixes)—because Flagstar and First American's timely offer to cure pursuant to the pre–2003 amendment version of section 50(a)(6)(Q)(x) validated the lien on the Fixes' home. *See Doody*, 49 S.W.3d at 347; *LaSalle*, 217 S.W.3d at 578.

Thus, the summary judgment evidence conclusively established that—under the pre–2003 amendment version of section 50(a)(6)(Q)(x)—Flagstar and First American offered to cure all defects in the second loan within a reasonable time after being notified of the defects. *See* Tex.R. Civ. P. 166a(b), (c); *Rhone–Poulenc*, 997 S.W.2d at 223.

Accordingly, the trial court properly granted Flagstar's and First American's

---

**5.** The Fixes argued in their brief and during oral argument that Flagstar's and First American's offer to cure does not comply with various provisions of the post–2003 amendment version of section 50(a)(6)(Q)(x). Because we have held that the pre–2003 amendment version of this section is applicable to the Fix–Flagstar refinance contract, we need not address these contentions.

**6.** We recognize that the Fixes refused to execute the documents necessary to in fact cure the constitutional defects in the second loan.

We cannot speculate as to whether the pre–2003 version of section 50(a)(6)(Q)(x) permits such refusal because the parties did not present such issue to the trial court and have not presented it on appeal. *See* Tex.R.App. P. 33.1, 38.1. Addressing the issues before us, we hold only that, applying the pre–2003 version of section 50(a)(6)(Q)(x), Flagstar and First American conclusively established a timely offer to cure and thereby properly obtained summary judgment on the Fixes' forfeiture claim.

traditional motions for summary judgment on the ground that they properly and timely offered to cure the constitutional defects in the second loan.[7] *See* TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co.*, 73 S.W.3d at 215. Furthermore, with the exception of the DTPA issue discussed below, the Fixes based their own motion for summary judgment on their forfeiture claim for Flagstar's and First American's violation of constitutional provisions and failure to cure such violations. Because we have already disposed of these issues in Flagstar's and First American's favor—holding that the summary judgment evidence conclusively established that an offer to cure all defects was made within a reasonable time—we hold that the trial court properly denied the Fixes' motion for summary judgment on their forfeiture claim. Accordingly, because the Fixes' third, fourth, fifth, seventh, eighth, and ninth issues all challenge the propriety of the trial court's denial of the Fixes' motion for summary judgment on their forfeiture claim, we overrule them all and address the Fixes' sixth and tenth issues below.

## VI. DTPA Violations

In their sixth issue, the Fixes allege that the trial court improperly granted Flagstar's and First American's motion for summary judgment on the Fixes' claim of a violation of the DTPA. The Fixes allege that Flagstar and First American provided refinancing and title insurance services in an unconscionable fashion and that the Fixes suffered economic damage from such conduct. Flagstar and First American respond with two arguments: the Fixes were not consumers under the DTPA because

the purpose of the second loan was not the purchase of a good or service and, even if the Fixes were consumers for DTPA purposes, they were unable to show any damages as a result of the refinance.

 To maintain a DTPA cause of action, the claimant must establish that (1) he or she is a consumer of the defendant's goods or services; (2) the defendant committed a false, misleading, or deceptive act in connection with the lease or sale of goods or services, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) such actions were the producing cause of the claimant's actual damages. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 513 (Tex.1998); *Wingate v. Acree,* No. 14–01–00851–CV, 2003 WL 1922569, at *3 (Tex.App.-Houston [14th Dist.] Apr. 24, 2003, no pet) (mem.op.); *see* TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.2006).

### A. Qualifying as a Consumer under the DTPA

 A person qualifies as a consumer under the DTPA by meeting two requirements. First, the person must seek or acquire goods or services by lease or purchase. TEX. BUS. & COM.CODE ANN. § 17.45(4). Second, the goods or services sought or acquired must form the basis of the party's complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex.1987). If either requirement is lacking, the party must look to the common law or some other statutory provision for redress. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981); *Ford*

---

7. The trial court's order granting summary judgment provided that "there is no genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law on all of the issues set out in their motions." Thus, we must uphold the trial court's summary judgment for Flagstar and First American if it is proper on any ground they asserted. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003); *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

v. City State Bank of Palacios, 44 S.W.3d 121, 133 (Tex.App.-Corpus Christi 2001, no pet.). Whether a person meets these requirements is a question of law. Johnson v. Walker, 824 S.W.2d 184, 187 (Tex.App.-Fort Worth 1991, writ denied); see also Ortiz v. Collins, 203 S.W.3d 414, 424 (Tex. App.-Houston [14th Dist.] 2006, no pet.).

Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service. Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 173–74 (Tex.1980) (holding that the refinance of a car loan did not confer consumer status on the debtor). Since the Riverside decision, the supreme court has limited the case to its facts, emphasizing that the claimant in Riverside sought only an extension of credit and nothing more. La Sara Grain Co. v. First Nat'l Bank of Mercedes, 673 S.W.2d 558, 566 (Tex.1984).

Even if the claimant seeks or acquires a "good" or "service" as defined by the DTPA and subsequent case law, the claimant must additionally show that the good or service sought or acquired forms the basis of the party's complaint in order to qualify as a consumer and to bring a valid DTPA claim. Melody Home Mfg. Co., 741 S.W.2d at 351–52. While title insurance is a service under the DTPA, 3Z Corp. v. Stewart Title Guar. Co., 851 S.W.2d 933, 937 (Tex.App.-Beaumont 1993, writ denied), a claimant can bring a DTPA claim against the title insurance company only if the title insurance services form the basis of the claim. See Chicago Title Ins. Co. v. McDaniel, 875 S.W.2d 310, 310 (Tex. 1994) (deciding a case where homeowners brought a DTPA claim against their title insurance company because their property was subject to a preexisting lien undiscovered by the title company); Everson v. Mineola Cmty. Bank, No. 12–05–00334–CV, 2006 WL 2106959, at *2 (Tex.App.-Tyler July 31, 2006, pet. denied) (mem.op.) (holding that homeowners were not consumers on the basis of their forced purchase of private mortgage insurance where their DTPA claim had nothing to do with the insurance itself but rather an allegedly wrongful foreclosure).

**B. The Fixes do not Qualify as Consumers under the DTPA**

The Fixes argue that they are consumers under the DTPA because they sought refinancing services from Flagstar and title insurance services from First American. First, the refinancing services sought from Flagstar are directly analogous to the refinancing services sought by the claimant in Riverside. See 603 S.W.2d at 173–74. Because the Fixes had already purchased their house, the Flagstar refinance merely extended credit to the Fixes. As such, the refinance cannot qualify as a good or a service under the DTPA. See id. Therefore, summary judgment in favor of Flagstar was proper because Flagstar conclusively disproved the consumer status element of a DTPA claim. See IHS Cedars Treatment Ctr., 143 S.W.3d at 798.

As to First American, assuming that title insurance constitutes a service under the DTPA, the Fixes must meet the second element of consumer status by basing their DTPA claim on faulty title insurance. See Chicago Title Ins. Co., 875 S.W.2d at 310; Melody Home Mfg. Co., 741 S.W.2d at 351–52. The Fixes failed to do this, however, because the basis of their claim is that Flagstar and First American refinanced too soon after the initial home equity loan with documents that permitted personal recourse and nonjudicial foreclosure. The Fixes' DTPA claim does not implicate the title insurance services provided by First American. Therefore, summary judgment in favor of First American was proper because First American also

conclusively disproved the consumer status element of the DTPA claim. *See IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798. Accordingly, we overrule the Fixes' sixth issue.

## VII. No–Evidence Summary Judgment in Favor of Horizon

The Fixes argue in their tenth issue that the no-evidence summary judgment granted in favor of Horizon was improper. As discussed, once a party without the burden of proof specifically states the elements for which there is no evidence on a claim, the party with the burden of proof must demonstrate that a genuine issue of material fact exists as to that element. TEX.R. CIV. P. 166a(i); *Johnson,* 73 S.W.3d at 207; *Sw. Elec. Power Co.,* 73 S.W.3d at 215. If the party with the burden of proof cannot show a genuine issue of material fact, then a no-evidence summary judgment is proper. TEX.R. CIV. P. 166a(i); *Johnson,* 73 S.W.3d at 207; *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

Reviewing the entire record in the light most favorable to the Fixes, indulging every reasonable inference in their favor, and resolving any doubts against the motion, we cannot say that the trial court erred by granting the no-evidence motion for summary judgment. *See IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798. Horizon was not involved in the transaction between the Fixes, Flagstar, and First American, and, in fact, did not become the assignee until two years after the parties signed the contract. As the assignee, Horizon had an interest in the ultimate resolution of the suit; however, that interest was wholly contingent on the determination of the suit between the Fixes, Flagstar, and First American. Once Flagstar and First American established the grounds for a traditional summary judgment, the Fixes had to bring forth at least a scintilla of evidence raising a genuine issue of material fact as to any cause of action against Horizon. *See Moore,* 981 S.W.2d at 269. Because the Fixes were unable to meet this burden, the trial court properly granted Horizon's no-evidence motion for summary judgment. Therefore, we overrule the Fixes' tenth issue that the no-evidence summary judgment in favor of Horizon was improperly granted.

## VIII. Conclusion

Having overruled all of the Fixes' issues, we affirm the trial court's judgment.