

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00043-CV

_____

ADAM LARGENT, Appellant

V.

CASSIUS CLASSIC CARS & EXOTICS, LLC, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-316092-20

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Adam Largent appeals the trial court's grant of summary judgment in favor of Appellee Cassius Classic Cars & Exotics, LLC (Cassius). Largent claims on appeal that the trial court erred because the summary-judgment evidence did not support (1) Cassius's claim under the Texas Deceptive Trade Practices Act (DTPA), (2) Cassius's claim for breach of contract, and (3) the award of attorney's fees. We will reverse the trial court's summary judgment and remand for further proceedings. *See* Tex. R. App. P. 43.2(d), 43.3(a).

## I. BACKGROUND

### A. PRE-SUIT AND PROCEDURAL BACKGROUND

Largent was in the business of buying, selling, and restoring vintage trucks in Washington State. After Cassius, a Texas business, purchased one of Largent's trucks in June 2019, a relationship formed through which Cassius purchased additional vehicles from Largent and paid him to restore those vehicles. This dispute arose when Cassius became dissatisfied with Largent's restoration work on several of these vehicles.

Cassius sued Largent for breach of contract, fraud, DTPA violations, and negligence.[1] Generally, Cassius alleged that Largent misrepresented the condition of

---

[1]Largent initially asserted a special appearance, arguing that the trial court did not have personal jurisdiction over him as to each of Cassius's claims. After the trial court denied his special appearance, Largent appealed that decision to our court. In a December 2020 opinion, we held that the trial court did not err in denying the special

the vehicles prior to Cassius purchasing them and also misrepresented his ability to perform the restoration services.

Cassius filed a motion for summary judgment to which Largent did not respond. The motion raised two grounds for recovery—breach of contract and DTPA violations—and also sought attorney's fees under the DTPA and Section 38.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Bus. & Com. Code Ann. § 17.50(d) (providing that successful DTPA claimants be awarded attorney's fees); Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8) (permitting recovery of attorney's fees in breach-of-contract claims). Specific to the DTPA claim, the motion alleged that certain misrepresentations made by Largent were the producing cause of Cassius's damages and that Cassius was entitled to recover "its out-of-pocket expenses, costs of repair, and benefit of its bargain."

The summary-judgment evidence consisted of two affidavits: (1) that of Spencer Evans, an "officer owner" of Cassius and (2) that of Wesly C. Maness, attorney for Cassius.

---

appearance as to Cassius's breach of contract, fraud, and DTPA claims, but that it did err in asserting personal jurisdiction over Cassius's negligence claim. *Largent v. Cassius Classic Cars & Exotics*, LLC, No. 02-20-00248-CV, 2020 WL 7252321, at *4–8 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.). Accordingly, we dismissed Cassius's negligence claim but affirmed the trial court's order as to the remaining claims. *Id.* at 8.

## B. EVANS'S AFFIDAVIT

In his affidavit, Evans stated that Largent approached him about partnering with Cassius, claiming to be a "top of the line restoration expert." At one point, Largent travelled to Texas to pitch this idea and told Evans that he could restore Cassius's trucks "at a fraction of the price" of that charged by other restorationist. Evans agreed to pay $15,000 for Largent to haul two Ford Broncos from Texas to Largent's shop in Washington for them to be restored. To haul the Broncos, Cassius let Largent "borrow" a 2011 Chevrolet truck and a 2007 Encore flatbed trailer "at no cost" to Largent.[2] Rather than use the $15,000 for restoration work on the Broncos, Evans attested that Largent admitted to using the funds as "a down payment on a new shop for himself."

Evans attested that, over the next three months, Cassius bought from Largent "additional vehicles" which Largent assured Evans were of the "highest quality." But after Largent performed restorative services on these vehicles and returned them to Cassius, it became apparent that the restorations were "substandard" and also that Largent had misrepresented the condition of the vehicles at the time he sold them to Cassius. In Evans's estimation, Cassius "incurred costs for corrective repairs to 13 vehicles in its possession, which were presented by Largent as being in excellent

---

[2]Evans attested that Largent never returned the trailer to Cassius and that the 2011 Chevrolet truck was returned via a third-party shipper—at Cassius's expense—after Largent claimed that the truck was inoperable. According to Evans, the truck was merely out of fuel.

condition, which were damaged by Largent's so[-]called 'restoration work' and 'repairs.'" A number of the vehicles were also returned with missing parts and without their titles. Because of this, Cassius requested for Largent to stop all work and to return all of the vehicles to Cassius. For a time after this, Largent continued to invoice Cassius for "unauthorized" restoration services.

Additionally, Cassius had purchased from Largent three other trucks—a 1971 Chevrolet K10 4x4, a 1966 Ford Step-Side 4x4, and a 1978 Ford F250 Supercab 4x4—and paid Largent to restore them. Evans stated that Largent never delivered these vehicles to Cassius.

Evans attested that Largent's "dealings, representations[,] and actions . . . were intentionally and knowingly made" and caused Cassius a loss of "no less than $172,000.00 as is shown in the attached Exhibit A-1." Exhibit A-1 contained the following table without further explanation:

| Adam Largent – Losses Caused | | | |
|---|---|---|---|
| 1977 Ford F250 | F26HL084923 | Red & White | $1,600 Dry Rotted Tires, Fuel Pump, Rear Tailgate (this was one of the first and by far the nicest truck we received from him) |
| 1979 Ford Bronco | U155LEC6291 | Blue & Silver | $10,900.00 misrepresentation of condition prior to purchase, damage to paint trying to spike "his invoice", missing parts when we got it back, double shipping |
| 1979 Ford Bronco | U155LFA6859 | Red & White | $8,300.00 misrepresentation of condition prior to purchase (significant rust), missing parts when we got it back, double shipping |
| 1979 Ford F250 | F265RDE5017 | Red & White | $4,200.00 misrepresentation of condition prior to purchase(not original paint, AC not working, wouldn't run, never received title) |
| 1970 Ford F250 | F26YRH55234 | Yellow & White | $3,400.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, wouldn't run) |
| 1979 Ford F250 | F265RDF0227 | Gold & Cream | $4,600.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, wouldn't run) |

| | | | |
|---|---|---|---|
| 1966 Ford F100 | Adam Still Has Possession | Blue | $14,000.00 Never seen this truck, but paid $6,000 to purchase & paid another $8,000 for him to restore (this truck is still in Adam's possession and in pieces last we knew) |
| 1978 F250/350 Super Cab? | X265KBG3363 | Brown & White? | $22,500.00 Never seen this truck, but paid $12,500 to purchase & Paid another $10,000 for him to restore. (this truck is still in Adam's position [sic] and in pieces last we knew) |
| 1977 F250 Super Cab | X14HKEC1430 | Brown | $8,800.00 misrepresentation of condition prior to purchase (significant rust, not original paint, A/C not working, wouldn't run) |
| 1977 Ford F150 | F14HR065118 | Brown | $7,300.00 misrepresentation of condition prior to purchase (significant rust, not original paint, A/C not working, wouldn't run) |
| 1975 Ford F250 | F26YRW62068 | Blue & White | $1,600.00 misrepresentation of condition prior to purchase (better than most, this was one of the first trucks we actually received, only a few short falls [sic], dry rotted tires) |
| 1978 Ford F250 Lariat | F265REA5056 | Blue & Light Blue | $12,900.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, bad interior, wouldn't run, body panel issues) |
| 1976 Ford F250 Explorer | F26YRA78959 | Orange | $6,800.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, bad interior, broken glass, seal issues, leaks, wouldn't run, body panel issues) |
| 1979 Ford Bronco | U15SLDJ4730 | Green & White | $16,000.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, bad interior, broken glass, seal issues, leaks, wouldn't run, body panel issues) |
| 1970-72 Chevrolet K10 | Adam Still Has Possession | Orange & White | $27,500.00 Never seen this truck, but paid $12,500 to purchase & paid another $15,000 for him to restore. (this truck is still in Adam's position [sic] and in pieces last we knew) |
| 1988 Ford Bronco | 1FMEU15H2JLA34841 | White & Red | $8,400.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, wouldn't run, required new motor) |
| 2011 Chevrolet 1 Ton Dually | 1GB4KZC89DF142159 | White | $5,600.00 Damage to truck while in his possession and cost to have it shipped back. |
| 2007 Encore GooseNeck Flatbed trailer | 5D3BG322XE103024 | Black | $7,600.00 Loaned to Adam, he still has it, won't return it to us |
| Total $172,000.000 | | | |

## C. MANESS'S AFFIDAVIT

Maness attested that he had practiced law in Dallas and Tarrant counties for twenty-nine years and was familiar with the customary fees charged for legal services in those communities. In representing Cassius in this case, Maness stated that he had reviewed all relevant documents, drafted the petition, responded to Largent's special

appearance and related appeal, engaged in discovery and multiple conferences, and drafted all documents related to Cassius's motion for summary judgment. He then opined as to the reasonable attorney's fees for this work:

> It is my opinion, based upon my years of experience of practice in this area of the law in Dallas and Tarrant counties, Texas[,] that all of the above services were necessary for the prosecution of this claim and that a reasonable fee for such services, consistent with the amounts charged by attorneys in this area for similar services, is $45,000. It is further my opinion that due to [Largent's] location out of state an[] additional $15,000.00 will be necessary to pursue collection of any judgment. It is further my opinion that additional attorneys' fees and expenses would be reasonably spent on behalf of [Cassius] in the event of an appeal to the Court of Appeals in the amount of $20,000.00, and $25,000.00 in the event of an appeal to the Texas Supreme Court.

Maness's affidavit contained no additional substantive information nor attached any billing records.

### D. TRIAL COURT GRANTS SUMMARY JUDGMENT

The trial court granted summary judgment and awarded Cassius "actual damages suffered as a result of the breaching, wrongful[,] and deceptive conduct of Defendant Adam Largent in the total amount $172,000.00." It further awarded Cassius DTPA treble damages of $344,000, attorney's fees of $45,000, and contingent appellate fees. Largent filed motions to set aside the summary judgment and for new trial, and then a first amended motion for new trial. The trial court denied these motions.

7

## II.  DISCUSSION

Largent argues that the trial court erred because the evidence was not legally sufficient to support the trial court's summary-judgment order as to either of the grounds raised by Cassius in its motion for summary judgment and the award of attorney's fees.  Because the trial court did not clearly delineate under which theory it granted summary judgment, we will analyze whether summary judgment could have rested on either the DTPA or breach of contract grounds raised by Cassius.  *See Heiser v. Eckerd Corp.*, 983 S.W.2d 313, 314 (Tex. App.—Fort Worth 1998, no pet.).

To aid in our analysis, we will classify the three categories of vehicles identified in Cassius's summary-judgment evidence from which it seeks damages.  First, there are thirteen Ford trucks of various year models that Cassius allegedly purchased from and paid Largent to restore that were delivered to Cassius in allegedly substandard conditions (the Defective Vehicles).  Second, there are three trucks—a 1971 Chevrolet K10 4x4, a 1966 Ford Step-Side 4x4, and a 1978 Ford F250 Supercab 4x4—that Cassius purchased from and paid Largent to restore, but that were never delivered to Cassius (the Undelivered Vehicles).  Finally, there are the 2011 Chevrolet truck and the 2007 Encore flatbed trailer that Largent borrowed from Cassius to haul the two Broncos from Texas to Washington (the Borrowed Equipment).

### A.  STANDARD OF REVIEW

We review a summary judgment de novo.  *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable

8

to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We will affirm a summary judgment only if the record establishes that no issues of material fact exist such that the movant has conclusively proved all essential elements of its cause of action as a matter of law. *Fielding*, 289 S.W.3d at 848; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Motions for summary judgment must stand on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary-judgment proof necessary to establish the movant's right. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Clear Creek Basin*, 589 S.W.2d at 678; *see Amedsisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (holding that if a movant does not meet its summary-judgment burden, the burden does not shift to the nonmovant, and the nonmovant does not need to respond or present any evidence). But the nonmovant who does not file a response may contend on appeal only that the movant's evidence supporting the motion was insufficient as a matter of law or that the grounds in the motion do not dispose of all the claims in the case. *Rhone-Poulenc*, 997 S.W.2d at 223; *Clear Creek Basin*, 589 S.W.2d at 678.

A motion for summary judgment can be granted only on those grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). When the trial court's order granting summary judgment does not specifically delineate the grounds upon which it was granted, we must consider whether any grounds set forth in the motion will support the judgment. *Heiser*, 983 S.W.2d at 314. We must affirm if any of those grounds support the judgment. *Id.*

## B. DTPA CLAIM

Largent first argues that the evidence was not legally sufficient to support each element of Cassius's DTPA claim. We agree.

To maintain a DTPA cause of action, the claimant must establish that (1) it is a consumer of the defendant's goods or services; (2) the defendant committed a false, misleading, or deceptive act in connection with the lease or sale of goods or services, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) such actions were the producing cause of the claimant's economic damages. Tex. Bus. & Com. Code Ann. § 17.50(a)–(b); *see Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied); *Matheus v. Sasser*, 164 S.W.3d 453, 458 (Tex. App.—Fort Worth 2005, no pet.). Economic damages are defined as "compensatory damages for pecuniary loss, including costs of repair or replacement." Tex. Bus. & Com. Code Ann. § 17.45(11). DTPA damages may include both direct and consequential damages. *Matheus*, 164 S.W.3d at 459–60. However, consequential damages "must be proved with reasonable certainty and are

10

not recoverable if they are too remote, too uncertain, or purely conjectural." *Id.* at 460.

For misrepresentation, there are two recognized measures of direct damages: the out-of-pocket measure or the benefit-of-the-bargain measure, whichever gives the plaintiff the greater recovery. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Out-of-pocket damages, based upon a restitutionary theory, measure the difference between the value the buyer has paid and the value of what he has received. *Id.* Benefit-of-the-bargain damages measure the difference between the value as represented and the value as received. *Id.* Both measures of damages are determined at the time of sale. *Id.* at 817.

Regardless of the damages theory employed, a DTPA claimant must prove their damages to be reasonable and necessary. *Perry Homes v. Alwattari*, 33 S.W.3d 376, 385 (Tex. App.—Fort Worth 2000, pet. denied) (explaining that a claimant need not use the words "reasonable" and "necessary," but that they must present evidence sufficient to support such a finding). "[E]vidence merely of the amounts charged or paid, the amount of the expense incurred, the nature of the expense, [or] the character of and need for the expense is not legally sufficient evidence that an expense is reasonable." *GHP Nail Sys., LLC v. Benelux Cosmetics B.V.*, 651 S.W.3d 574, 582 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *McGinty v. Hennen*, 372 S.W.3d 625, 625 (Tex. 2012); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200–01 (Tex. 2004)).

11

## 1. The Defective Vehicles

First, a fact issue exists as to the proper amount of damages available to Cassius related to the thirteen Defective Vehicles. In its motion for summary judgment, Cassius asked to recover damages for "its out-of-pocket expenses, costs of repair, [and] the benefit of its bargain." Evans attested that Cassius had incurred costs to make "corrective repairs" to these vehicles. Then, in the exhibit attached to his affidavit, he listed each of the vehicles with a round dollar amount followed by a vague description. For example: "1970 Ford F250 . . . $3,400.00 misrepresentation of condition prior to purchase (rust, dry rotted tires, wouldn't run)[.]" This is the only evidence provided by Cassius to prove its damages for each of the Defective Vehicles.

Cassius presented no evidence establishing the value of the vehicles as purchased or as represented by Largent nor the value of the vehicles it received. *See Arthur Andersen*, 945 S.W.2d at 817. Instead, Cassius listed a round dollar amount with no clear explanation as to whether this amount represented its repair costs, a measure of its direct damages, or some mixture of both. And Cassius made no attempt to show how these damages amounts were reasonable or necessary. *See Alwattari*, 33 S.W.3d at 385. Accordingly, the damages evidence related to the Defective Vehicles was conjectural and left unresolved a material issue of fact as to the proper amount of damages available for these vehicles. *See Fielding*, 289 S.W.3d at 848.

## 2. The Undelivered Vehicles

Cassius alleged that it entered into agreements whereby it purchased the three Undelivered Vehicles from Largent and paid him to restore these vehicles. Despite making these payments, Cassius claims to have "[n]ever seen" any of these vehicles. Specific to these vehicles, Cassius did not plead facts raising a DTPA violation, only that it entered into the agreements with Largent and that he failed to perform his side of the bargain.

"An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996). Because Cassius raised only breach of contract claims related to the Undelivered Vehicles, they could not serve as the basis for summary judgment on its DTPA claim. *Id.*

## 3. The Borrowed Equipment

That leaves us to consider whether the Borrowed Equipment could sustain summary judgment on DTPA grounds. To maintain a DTPA action, the claimant must be "a consumer of the defendant's goods or services." *Fix*, 242 S.W.3d at 159; *see* Tex. Bus. & Com. Code Ann. § 17.45(4) (defining "consumer" as a person or corporation "who seeks or acquires by purchase or lease, any goods or services . . . .").

Simply put, Cassius was not a consumer in relation to the Borrowed Equipment. It is undisputed that Cassius was at all relevant times the *owner* of the Borrowed Equipment and never sought to purchase or lease the truck and trailer from

13

Largent. Accordingly, the Borrowed Equipment could not serve as the basis for summary judgment on Cassius's DTPA claim.

### 4. Treble Damages

The trial court awarded Cassius treble damages under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1). Because we have held that summary judgment was not appropriate on DTPA grounds, it follows that the trial court erred in awarding Cassius treble damages under the DTPA.

Having held that a fact issue existed as to damages available related to the Defective Vehicles, and that Cassius's DTPA claim could not rest on the evidence and facts presented in relation to the Undelivered Vehicles or the Borrowed Equipment, we hold that the trial court's summary-judgment order was not proper on DTPA grounds. We sustain Largent's first issue.

### C. BREACH OF CONTRACT CLAIM

In its motion for summary judgment, Cassius also pleaded that it had entered into agreements with Largent as to each of the vehicles and that Largent breached those agreements. In his second issue, Largent contends that the evidence was legally insufficient to support summary judgment on Cassius's breach-of-contract grounds. We agree.

To prevail on a breach of contract claim, the plaintiff must establish: (1) a valid contract with the defendant, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the plaintiff suffered damages as a result of that breach. *Lloyd*

14

*Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App.—Fort Worth 2018, no pet.). To prove the existence of a binding contract—either written or oral—the plaintiff must establish: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* To be binding, a contract must be sufficiently definite in its terms for the court to understand what the promisor undertook. *Id.* at 259. "A lack of definiteness precluding the existence of an enforceable contract can concern the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred." *Id.*

Further, the plaintiff bears the burden of proving his breach-of-contract damages with "some degree of certainty" and an award of damages "must have factual support in the record." *Lakewood Pipe of Tex., Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 (Tex. App.—Houston [1st Dist.] 1991, no writ). A plaintiff need not exactly prove his damages, but the evidence supporting breach-of-contract damages must be "sufficient to afford a reasonable basis for determining his loss." *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 484 (Tex. 1984). Thus, damages are not recoverable if they are "remote, contingent, speculative, or conjectural." *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App.—Fort Worth 2015, no pet.).

15

## 1. The Defective Vehicles

Again, the only evidence supporting summary judgment on Cassius's breach-of-contract claim came from Evans's affidavit. Evans made only broad allusions to the existence of agreements pertaining to the Defective Vehicles and—except for stating that Cassius paid $15,000 to have two Broncos transported to Washington to be restored—presented no specific evidence concerning the time of performance, the exact work to be done, or the prices to be paid for the work for any of the other vehicles. *See Walterscheid*, 557 S.W.3d at 259. Viewed in the light most favorable to Largent, we conclude that this evidence did not establish as a matter of law the existence of binding agreements related to the Defective Vehicles.[3] *Fielding*, 289 S.W.3d at 848.

Additionally, for the same reasons detailed above in our DTPA analysis, Cassius's breach-of-contract damages evidence was not legally sufficient as to the Defective Vehicles because it was conjectural and provided no reasonable basis upon which to determine Cassius's loss. *Morgan*, 462 S.W.3d at 289.

---

[3]In its Appellee's brief, Cassius contends that its agreements with Largent were implied rather than express and, thus, their terms could be inferred from the circumstances raised in its summary-judgment evidence. However, Cassius never pleaded the existence of any implied agreements and never raised this theory in its summary judgment motion or evidence. Thus, this argument is unavailing because "where an express contract only is pleaded, recovery cannot be had on an implied contract . . . ." *Hays v. Starling*, 619 S.W.2d 14, 15 (Tex. App.—Fort Worth 1981, no pet.).

## 2. The Undelivered Vehicles

Evans's affidavit mentions the Undelivered Vehicles only once, when he attested that "Cassius has demanded the return of a 1971 Chevrolet K10 4x4, a 1966 Ford Step-Side 4x4, and a 1978 Ford F250 Supercab 4x4, all of which are being unlawfully held by Largent, which are owned by [Cassius]." The only other evidence presented to establish agreements related to the Undelivered Vehicles came through the exhibit attached to Evans's affidavit:

- 1966 Ford F100: $6,000.00 to purchase and $8,000.00 to restore;

- 1978 Ford F250: $12,500.00 to purchase and $10,000.00 to restore;

- 1971 Chevrolet K10: $12,500.00 to purchase and $15,000.00 to restore.

Thus, Cassius presented no evidence concerning the time of performance or the exact work to be done in relation to these vehicles. *Walterscheid*, 557 S.W.3d at 259. And though Cassius did show that it issued payment to Largent for the purchase and restoration of these vehicles, there is no evidence that Largent accepted and consented to the terms of the alleged agreements. *Id.* at 258. Viewed in the light most favorable to Largent, we conclude that this evidence did not establish as a matter of law the existence of binding contracts related to the Undelivered Vehicles. *Fielding*, 289 S.W.3d at 848.

### 3. The Borrowed Equipment

Evans attested that "Cassius did agree to pay Largent $15,000 to transport and restore the" Broncos and "loaned a truck and trailer (at no cost) to transport the Broncos." The exhibit attached to his affidavit provided that, for the 2011 Chevrolet truck, Cassius claimed $5,600 for "[d]amage to the truck while in [Largent's] possession and cost to have it shipped back." And for the 2007 flatbed trailer, Cassius claimed $7,600 because Largent "still has it [and] won't return it to us."

First, this evidence does not conclusively establish the existence of a binding agreement related to the Borrowed Equipment or show how Largent may have breached that agreement. This evidence establishes only that Cassius let Largent borrow the equipment to transport the Broncos. It does not, however, provide the time of performance for when the truck and trailer were to be returned to Cassius. *See Walterscheid*, 557 S.W.3d at 259. This leaves fact issues related to the definiteness of the alleged agreement. *Id.* Relatedly, without evidence establishing when and how Largent was supposed to return the Borrowed Equipment, fact issues exist as to whether Largent breached the alleged agreement by failing to return the equipment by the agreed-upon date or whether it was a breach for him to return the truck using a third-party shipper. *Id.* at 258.

This evidence was also insufficient to conclusively prove Cassius's breach-of-contract damages as to the Borrowed Equipment. Cassius presented no evidence establishing what damage had been done to the truck or what amount would have

18

been reasonable to repair this damage. Similarly, no evidence was presented related to the actual or reasonable cost to have the truck shipped back to Texas. For the trailer, no evidence was presented to explain how Cassius arrived upon this amount of damages (e.g., the value of the trailer when it was loaned to Largent) or to otherwise support that $7,600 was reasonable compensation for its loss. Without more evidence, these damages amounts constitute nothing more than speculation or conjecture. *Morgan*, 462 S.W.3d at 289.

For these reasons, we hold that Cassius did not establish as a matter of law that it was entitled to summary judgment on its breach-of-contract claim. We sustain Largent's second issue.

### D. ATTORNEY'S FEES

In his final issue, Largent argues that the award of attorney's fees—including the conditional appellate fees—was not supported by legally-sufficient evidence. Again, we agree.

While billing records are not required—only "strongly encouraged"—to prove attorney's fees, a party seeking its fees must nonetheless present "sufficient evidence" that "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498, 502 (Tex. 2019). "Without detail

about the work done, how much time was spent on the tasks, and how he arrived at the . . . sum, [the attorney's] testimony lacks the substance required to uphold a fee award." *Id.* at 505; *see Wells Fargo Bank, N.A. v. Rodriguez,* No. 02-21-00155-CV, 2022 WL 803839, at *4 (Tex. App.—Fort Worth Mar. 17, 2022, no pet.) (mem. op.) (holding attorney's summary-judgment affidavit insufficient to support fee award).

Maness's affidavit does not meet these minimum criteria. While it stated a list of general tasks performed by Maness in this matter and opined that $45,000 was a reasonable fee for the services, it did not state a reasonable hourly rate or an assessment of the reasonable amount of time needed to perform these services. *See Rohrmoos,* 578 S.W.3d at 498.

The evidence related to the contingent appellate fees is similarly insufficient. To support a conditional award of appellate attorney's fees, a party must provide opinion testimony about the services they reasonably believe will be necessary to defend the appeal and about a reasonable hourly rate for those services. *Yowell v. Granite Operating Co.,* 620 S.W.3d 335, 355 (Tex. 2020). Maness's affidavit provides no such testimony. Instead, it merely states an opinion that reasonable fees would equal $20,000 for an appeal to a court of appeals and $25,000 for an appeal to the Texas Supreme Court.

Accordingly, we hold that the evidence did not conclusively prove the amount of Cassius's reasonable and necessary attorney's fees and contingent appellate fees. We sustain Largent's third issue.

## III. CONCLUSION

Having held that Cassius did not conclusively prove its entitlement to summary judgment on either of the grounds raised in its motion for summary judgment nor its entitlement to attorney's fees, we reverse the trial court's order granting summary judgment to Cassius and remand to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d), 43.3(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered: February 23, 2023