

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00092-CV

VAUGHN L. BAILEY AND CELESTE
BAILEY

APPELLANTS

V.

BANK OF AMERICA, N.A. F/K/A
BAC HOME LOAN SERVICING, LP
F/K/A COUNTRYWIDE HOME
LOANS SERVICING LP

APPELLEE

----------

## FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Vaughn L. and Celeste Bailey appeal from a summary judgment for Bank

of America, N.A., formerly known as BAC Home Loan Servicing, LP, which in

turn was formerly known as Countrywide Home Loans Servicing LP. In two

----------

[1]*See* Tex. R. App. P. 47.4.

points, the Baileys contend that the trial court erred by granting summary judgment. We affirm.

## Background

In 2005, Vaughn obtained a loan from America's Wholesale Lender; the note was secured by a deed of trust signed by both Baileys. The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for the lender and its successors and assigns. A second deed of trust, with an attached exhibit bearing a corrected legal description of the property, was recorded in the Tarrant County property records on October 4, 2010. BAC, as servicer of the loan, sent the Baileys a notice of default on October 19, 2009. On January 15, 2010, an assignment of the Baileys' deed of trust from MERS to BAC was recorded in the Tarrant County property records; the assignment was signed on behalf of MERS by Stephen Porter, as an assistant secretary, and was dated effective November 26, 2009.

On December 30, 2010, the Baileys sued BAC. On January 5, 2011, BAC sent notices to the Baileys that it had accelerated the debt and had scheduled a foreclosure sale for February 1, 2011. Nothing in the record indicates that BAC went forward with the sale. In October 2012, Bank of America[2] filed a combined traditional and no-evidence motion for summary judgment, which the trial court granted.

---

[2]Bank of America is BAC's successor-in-interest by merger.

## Adequate Time for Discovery

In their second point, the Baileys contend that the trial court erred by granting summary judgment because they did not have an adequate time for discovery. In their brief, they argue specifically that

> [i]nformation outside the formal discovery process that guides counsel in the focused pursuit of certain items in discovery has been in flux in this area of law, with developments over the past two years constantly affecting the calculus of when and where discovery should be pursued, and the preferred specificity of each request.

They also contend that they pled their claims in good faith.

A party claiming an inadequate time for discovery must file an affidavit explaining the need for further discovery or a verified motion for continuance. *See* Tex. R. Civ. P. 166a(g); *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 407 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The Baileys did not file an affidavit or verified motion for continuance explaining the need for further discovery. Moreover, Bank of America filed its motion for summary judgment almost two years after the Baileys filed suit and approximately a year and half after BAC had filed its original answer, which also sought discovery. Thus, we conclude and hold that the trial court did not err by granting summary judgment before an adequate time for discovery had passed. We overrule the Baileys' second point.

**Propriety of Summary Judgment**

In their first point, the Baileys contend that they raised a fact issue on each element of their claims, thereby defeating Bank of America's summary judgment motion.

**Allegations in Baileys' First Amended Petition**

### Assignment to BAC from MERS

In their first amended petition, the Baileys alleged that the recorded assignment of the deed of trust from MERS to BAC is invalid because MERS had no interest in the note and thus lacked capacity to assign the deed of trust. Additionally, according to the Baileys, the assignment was fraudulent because Porter knowingly and intentionally executed it without proper authorization from MERS. Because Porter—on behalf of MERS acting as "attorney-in-fact" for BAC—had also signed two other documents appointing substitute trustees under the deed of trust, which were recorded in the Tarrant County property records, the Baileys contend those documents are fraudulent as well. The Baileys sought damages for the allegedly fraudulent documents under section 12.003(a)(8) of the civil practice and remedies code and under the Texas deceptive trade practices act (DTPA). Tex. Bus. & Com. Code Ann. § 17.50 (West 2011); Tex. Civ. Prac. & Rem. Code Ann. § 12.003(a)(8) (West 2002).

### Notices of Acceleration and Foreclosure

The Baileys also claimed that BAC had no capacity to threaten foreclosure in its January 5, 2011 notice of substitute trustee's sale. They alleged that BAC

4

violated section 392.301(a)(8) of the finance code because it had no authority or capacity to threaten foreclosure and its notices of acceleration and foreclosure were therefore not in compliance with sections 51.002(d) and 51.0025(2) of the property code. Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006) (prohibiting debt collector from "threatening to take an action prohibited by law" in attempt to collect a debt); Tex. Prop. Code Ann. §§ 51.002(d) (setting forth method by which mortgage servicer must provide notice of default), 51.0025(2) (West Supp. 2013) (providing that mortgage servicer may administer foreclosure on behalf of mortgagee if the required notices disclose the representation and address of either the mortgagee or servicer). The Baileys also claimed damages for BAC's alleged negligent misrepresentation that it owned the loan secured by the deed of trust, and the corresponding servicing rights, and that it had the capacity to enforce the deed of trust lien.

**Alleged Modification Plan**

The Baileys further claimed that Vaughn had tried to contact BAC in December 2009 about a modification or workout arrangement and that BAC told him that if he paid $8,100.17 in certified funds, it would begin a workout process and not attempt to foreclose. The Baileys allege that they relied on BAC's representations and hand delivered a cashier's check for $8,100.17 to BAC's counsel but nevertheless received notice from BAC that it was returning the check because it was an incorrect amount and was not certified funds. The

5

Baileys claim that Bank of America proceeded to foreclose even after assuring the Baileys that it would not do so.

The Baileys sought damages for BAC's alleged misrepresentations about the alleged loan modification under section 392.404 of the finance code and section 17.46(b)(24) of the business and commerce code. They also sought damages for negligent misrepresentation.

**Summary Judgment Grounds**

In its motion for summary judgment, Bank of America alleged that it was the lawful beneficiary of the deed of trust, that the Baileys had been in default since September 2009, that the Baileys had failed to timely cure the default after receiving proper notice of default and opportunity to cure, and that BAC as the mortgage servicer had properly served the Baileys notices of acceleration and foreclosure. Bank of America also claimed that the applicable property records showed its authority to proceed with foreclosure under the deed of trust, that MERS validly assigned the deed of trust to BAC, that the Baileys were not "consumers" such that they had standing to bring a DTPA claim, and that the Baileys' claim sounded in contract, not in tort, such that they could not maintain a claim for negligence. Bank of America also contended that the Baileys could produce no evidence that it had failed to comply with the Texas debt collection practices act, that it had violated the DTPA, or that its negligence was the proximate cause of any damages to the Baileys.

6

Bank of America attached to its motion for summary judgment the affidavit of its records custodian, with a copy of the note, deed of trust, assignment, and October 2009 notice of default. It also attached an affidavit from the records custodian for its counsel, with copies of the notices of acceleration and foreclosure sale.

**Response**

The Baileys attached to their response an affidavit from Vaughn in which he averred as follows:

> In December, 2009, I approached BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP ("BAC") about a modification or workout arrangement on the Loan. BAC represented to me that if I made a payment of $8,100.17 in certified funds, BAC would begin a workout process and not attempt to foreclose on the Property. I relied on BAC's representations, agreed to provide the funds, and hand-delivered Frost National Bank Cashier's Check 714003094 dated December 31, 2009 in the amount of $8,100.17 to BAC via their counsel, Barrett Daffin Frappier Turner & Engel in Addison, Texas. I received a notice from BAC dated January 13, 2010, that they were returning the cashier's check because it was (a) in an incorrect amount and (b) not in certified funds, both of which allegations were plainly untrue. Thereafter, I attempted numerous times to speak to BAC personnel by phone to rectify the situation, but was never able to reach a BAC representative who would pull up the file and address the problem; instead, I was hung up on more than once.
>
> Throughout the course of our dealings, BAC has presented me a moving target, and despite my compliance with their series of requests for information and attempt to pay them in the amount, form and manner they requested, they did not stand by their promise to accept payment from me and go through with the workout arrangement they induced me to commence.
>
> . . . .

7

> I received a notice, issued on behalf of BAC as mortgagee, of a substitute trustee's sale of the Property for January 4, 2011, despite BAC having assured me that they would not attempt to foreclose on my Property.

Additionally, the Baileys attached a deposition excerpt from a suit in a New Jersey trial court in which Countrywide was a third party defendant. The name William Hultman is noted at the bottom of the title page, and the Baileys represented in their response that the deposition is of William Hultman, the secretary of MERS. In the deposition excerpt from April 7, 2010, Hultman states that it was his belief that MERS's bylaws, which authorized the Board of Directors to appoint vice presidents, also provided authority for the Board to delegate to him personally the authority to appoint such vice presidents. He also testified that there were no minutes evidencing his appointment of a Mr. Hallinan as a vice president of MERS.

## Analysis

### Validity of Assignment and Subsequent Foreclosure Notices

The Baileys contend that the deposition testimony they proferred creates a fact issue as to Porter's capacity to execute documents on behalf of MERS. This argument has been made recently in a Texas appellate court to no avail. *See Lowery v. Bank of Am., N.A.*, No. 04-12-00729-CV, 2013 WL 5762227, at *2–3 (Tex. App.—San Antonio Oct. 23, 2013, no pet.) (mem. op.) (concluding that Hultman's deposition testimony is no evidence that Porter lacked authority to assign deeds of trust for MERS); *cf., e.g.*, *Marsh v. JPMorgan Chase Bank, N.A.*,

8

888 F. Supp. 2d 805, 809 (W.D. Tex. 2012) (holding that borrowers lacked standing to challenge authority of signatory of assignment from MERS because they were not parties to the assignment). We agree with the San Antonio Court of Appeals's reasoning in *Lowery*: at most, the deposition excerpt attached to the Baileys' response shows that the Board of Directors of MERS may or may not have, prior to the date of the deposition, delegated to Hultman, as secretary, the authority to appoint vice presidents, specifically a Mr. Hallinan. It is not evidence that Porter lacked authority to execute the January 2010 assignment of the deed of trust on MERS's behalf. Because the Baileys' contentions about the validity of the substitute trustee appointments and notices of acceleration and foreclosure[3] are based on their argument that Porter lacked authority to execute documents on behalf of MERS, those arguments also fail. *See Robeson v. MERS*, No. 02-10-00227-CV, 2012 WL 42965, at *6 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.).

---

[3]The Baileys also argue in their brief that the notices attached to Bank of America's motion for summary judgment were not "executed" for purposes of compliance with section 51.002(b). We construe their argument to be that the notices do not bear a handwritten signature. The Baileys cite an inapposite case holding that unsigned documents may be construed with a signed document only if the unsigned documents are specifically incorporated by reference into the signed document. *Caufmann v. Schroer*, No. 03-08-00517-CV, 2010 WL 668869, at *2 n.12 (Tex. App.—Austin Feb. 26, 2010, no pet.) (mem. op.). The Baileys have not cited, and we have not found, any authority requiring the notices under section 51.002(b) to be signed to be valid. *Atchley v. Chase Home Fin. LLC*, No. 02-12-00365-CV, 2013 WL 3064444, at *2 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.).

9

The Baileys additionally complain that Bank of America did not properly prove its ownership of the note. But Bank of America did not have to prove ownership of the note to validly foreclose on the deed of trust. *See, e.g.*, *Farkas v. Aurora Loan Servs., LLC*, No. 05-12-01095-CV, 2013 WL 6198344, at *4 (Tex. App.—Dallas Nov. 26, 2013, no pet.) (mem. op.); *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 361–62 (Tex. App.—Dallas 2007, pet. denied) (holding that in suit for foreclosure under deed of trust, introduction of note into evidence was unnecessary when other evidence showed borrower was in default on the note).

**Deed of Trust Copy Proferred by Bank of America**

The Baileys contend that the deed of trust attached to Bank of America's motion for summary judgment is the original recorded deed of trust, which identifies the wrong property addition in the legal description. According to the Baileys, the deed of trust is therefore invalid and supportive of their fraudulent document claim. The deed of trust is the only document attached by Bank of America that contains the incorrect legal description; the records custodians' affidavits, the assignment, and the notices of acceleration and foreclosure all contain the correct description. The notice of foreclosure sale references two recording numbers for the deed of trust: D205151708 "as affected by . . . D201243345." The second recording number corresponds to what the Baileys' counsel described in his affidavit attached to their summary judgment response as a "re-recorded" deed of trust with the correct legal description. Moreover, the

10

note, original deed of trust, assignment, and statutory notices all list the property address as 1428 Virginia Place, Fort Worth, Texas 76107-2466. *See, e.g.*, *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) ("A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty."); *Hebisen v. Nassau Dev. Co.*, 754 S.W.2d 345, 351 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (holding that mailing address described property with reasonable certainty), *disapproved of on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998).

Thus, we conclude and hold that the trial court did not err by granting summary judgment on the Baileys' fraudulent document claims and all of their related claims for damages under the civil practice and remedies code, DTPA, finance code, and for negligent misrepresentation as to those documents.

**Alleged Modification Agreement**

The Baileys argue that Vaughn's affidavit establishes specific instances of misconduct by BAC "in negligently or deceptively furnishing information on which [the Baileys] relied in tendering certified funds, [which] BAC refused to accept . . . in the manner in which BAC asked for them." The Baileys essentially allege that Bank of America refused to perform an agreement to modify an already-existing loan. Because a person seeking to renew or extend a pre-existing loan is not seeking goods or services, he or she does not qualify as a "consumer" under the

11

definition of the DTPA; thus, this type of transaction is not subject to a DTPA claim. *See* Tex. Bus. & Com. Code Ann. § 17.45(1)–(2), (4) (West 2011); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App.—Fort Worth 2007, pet. denied); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 135 (Tex. App.—Corpus Christi 2001, no pet.); *see also, e.g.*, *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (relying on *Fix* and *Ford* to hold that borrowers seeking modification of existing loan did not qualify as consumers who could bring a DTPA cause of action).

Moreover, the Baileys failed to establish that BAC owed them any duty independent of its obligations as the lender under the note and deed of trust; therefore, they cannot recover for negligent misrepresentation in this context. *See Krudop v. Bridge City State Bank*, No. 09-05-00111-CV, 2006 WL 3627078, at *3 (Tex. App.—Beaumont Dec. 14, 2006, pet. denied) (mem. op.) (involving alleged failure of bank president to adhere to verbal agreement to forego threatened foreclosure); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).

Therefore, we conclude and hold that the trial court did not err by granting summary judgment on the Baileys' remaining DTPA, finance code, and negligent misrepresentation claims arising from their allegations that BAC failed to comply with an agreed loan modification.

We overrule the Baileys' first point.

## Conclusion

Having overruled both of the Baileys' points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  March 13, 2014